# United States Court of Appeals
# for the Federal Circuit

---

**STEVEN B. BERLIN, JONATHAN C. CALIANOS,
LINDA S. CHAPMAN, RICHARD M. CLARK,
WILLIAM R. DORSEY, JENNIFER GEE, COLLEEN
A. GERAGHTY, CHRISTINE L. KIRBY, PAMELA J.
LAKES, TIMOTHY J. MCGRATH, RICHARD A.
MORGAN, RUSSELL PULVER, STEPHEN M.
REILLY, PATRICK M. ROSENOW, DANIEL F.
SOLOMON, DANIEL F. SUTTON, DREW A. SWANK,
AND THERESA C. TIMLIN,**
*Petitioners,*

**v.**

**DEPARTMENT OF LABOR,**
*Respondent.*

---

2014-3031

---

Petitions for review of the Merit Systems Protection
Board in Nos. CB-7521-13-0072-T-1, CB-7521-13-0074-T-
1, CB-7521-13-0075-T-1, CB-7521-13-0076-T-1, CB-7521-
13-0079-T-1, CB-7521-13-0080-T-1, CB-7521-13-0081-T-1,
CB-7521-13-0087-T-1, CB-7521-13-0089-T-1, CB-7521-13-
0093-T-1, CB-7521-13-0095-T-1, CB-7521-13-0098-T-1,
CB-7521-13-0100-T-1, CB-7521-13-0102-T-1, CB-7521-13-
0106-T-1, CB-7521-13-0108-T-1, CB-7521-13-0109-T-1,
and CB-7521-13-0110-T-1.

————————————

Decided: November 20, 2014

————————————

PAUL A. MAPES, of Walnut Creek, California, argued for petitioners.

ALLISON KIDD-MILLER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and REGINALD T. BLADES, JR., Assistant Director. Of counsel on the brief were JAMES V. BLAIR, Counsel for Employment Law and KATHERINE BREWER, Trial Attorney, Office of the Solicitor, United States Department of Labor, of Washington, DC.

MARTIN R. COHEN, Assistant General Counsel for Litigation, American Federation of Government Employees, of Elkins Park, Pennsylvania, for amicus curiae The American Federation of Government Employees.

GREGORY O'DUDEN, General Counsel, National Treasury Employees Union, of Washington, DC, for amicus curiae National Treasury Employees Union. With him on the brief were LARRY J. ADKINS, Deputy General Counsel, and MATTHEW D. ROSS, Assistant Counsel.

JOHN P. MAHONEY, Tully Rinckey, PLLC, of Washington, DC, for amicus curiae The Federal Administrative Law Judges Conference.

————————————

Before DYK, TARANTO, and HUGHES, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Under 5 U.S.C. § 7521, an agency may furlough an administrative law judge (ALJ) for 30 days or less "only for good cause established and determined by the Merit Systems Protection Board" in a formal adjudication. In this case, the Board determined that the Department of Labor had good cause for its decision to furlough its ALJs for a particular length of time in 2013. We affirm. The challenged furlough of ALJs, which was part of a program of furloughs throughout the Department and indeed throughout the federal government, was the result of a neutral, reasonable, statute-based determination about how to implement a government-wide budget sequester. The Board could therefore find good cause.

## BACKGROUND

The Budget Control Act of 2011, Pub. L. No. 112-25, §§ 101–103, 125 Stat. 240, 241–46, and the American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, § 901, 126 Stat. 2313, 2370, made amendments to the Balanced Budget and Emergency Deficit Control Act of 1985, Pub. L. No. 99-177, title II, 99 Stat. 1038, codified in pertinent part at 2 U.S.C. § 901 *et seq.* The amendments established spending limits for agencies of the federal government and required automatic reduction of spending ("sequestration" or "sequester") under certain statutory conditions, implemented under certain directives of the Office of Management and Budget (OMB). The 2012 Taxpayer Relief Act (§ 901(e)) specifically required the President to issue a sequestration order on March 1, 2013, near the middle of fiscal year 2013. 126 Stat. at 2370.

On that date, President Obama issued a sequestration order requiring reductions in spending from most federal budget accounts for fiscal year 2013. 78 Fed. Reg. 14,633. The order states that each agency must administer the spending cuts, for "each non-exempt budget account," "in strict accordance with the requirements" of 2 U.S.C. § 901a "and the specifications of [OMB's] report of March

1, 2013, prepared pursuant to" § 901a(9). 78 Fed. Reg. 14,633. Section 901a mandates compliance with another statutory provision, 2 U.S.C. § 906(k), which provides that "the same percentage sequestration shall apply to all programs, projects, and activities within a budget account." 2 U.S.C. §§ 901a(8), 906(k)(2).

OMB, performing its statutory role, calculated that the Department of Labor had to reduce spending by five percent in a budget account called the Departmental Management Salaries and Expenses account. Office of Mgmt. & Budget, Exec. Office of the President, *OMB Report to the Congress on the Joint Committee Sequestration for Fiscal Year 2013* app. 41 (2013). The Department, with OMB's approval for sequester purposes (J.A. 520), broke down that budget account into nine subaccounts (known as "programs, projects, and activities," 2 U.S.C. § 906(k)(2)), one of which is "Adjudication." Based on 2 U.S.C. § 906(k)(2), the Department applied "the same percentage" cut to all subaccounts within the account. It then chose to apply the five-percent cut equally to the four offices within the Adjudication subaccount, one of which is the Office of Administrative Law Judges.[1]

Those determinations led directly to the furlough result challenged here. The Office spends more than half of its budget on salaries and a majority of the remainder on nondiscretionary costs, such as rent. Thus, to make the required cuts, the Office calculated that it had to furlough all of its employees, including its ALJs, for 5.5 days. The same methodology produced longer furloughs for many employees in other offices covered by the Adjudication subaccount, and the ALJs before us therefore do not challenge their furloughs based on a comparison to other Adjudication employees. But the methodology produced shorter furloughs for employees covered by less salary-or-

---

[1] A small percentage of the Office's funding came from a separate account subject to a 5.1% reduction.

rent-heavy subaccounts outside the Adjudication subaccount (or outside the Management and Salaries Expenses account), J.A. 40, and it is those comparatively short furloughs that the ALJs here invoke in complaining of their furloughs.

To furlough its ALJs, the Department first filed a complaint with the Board on March 18, 2013.  J.A. 116–24; s*ee* 5 U.S.C. § 7521; 5 C.F.R. § 1201.137.  The Board assigned Administrative Law Judge Jordan (from the United States Coast Guard) to conduct a hearing and make the initial decision whether to authorize the furloughs.  *See* 5 C.F.R. § 1201.140.  After discovery and a two-day hearing in late July 2013, Judge Jordan concluded that the Department had good cause to furlough its ALJs.  *Dep't of Labor v. Avery*, No. CB-7521-13-0070-T-1, slip op. at 2–3, 39 (M.S.P.B. Aug. 20, 2013).  When it came to the length of furloughs throughout the Department, however, Judge Jordan concluded that the Department had to consider the "special status" of ALJs and that doing so would require the Department to shift funds from one subaccount to another, or otherwise reallocate funds, so that ALJs did not receive a longer furlough than other employees paid from the same account.  *Id.* at 35–38 ("[A]s a special class of employee protected in their compensation and tenure, [ALJs] should not be forced to bear a greater furlough than most employees.").  On that basis, Judge Jordan determined that the Department had good cause to furlough the ALJs for only four days, the average furlough length for other furloughed employees within the Management Salaries and Expenses account.  *Id.* at 39–40.

The Department petitioned the full Board for review of the initial decision under 5 C.F.R. § 1201.114, and the ALJs cross-petitioned for review of Judge Jordan's decisions denying their motion to compel discovery and excluding certain witness testimony.  The Board vacated the initial decision, found that the Department had good

cause to furlough the ALJs for the full 5.5-day period, and denied the ALJs' cross-petition. *Dep't of Labor v. Avery*, 2013 M.S.P.B. 75 ¶ 1 (*Board Decision*). The Board noted its "flexible approach in which good cause is defined according to the individual circumstances of each case." *Id.* ¶ 5. Applying that flexible approach, the Board found that, because of the sequester-induced budget shortfall, the Department "had sound business reasons behind its decision to furlough" the ALJs for the full 5.5 days. *Id.* ¶ 13. It also found "no evidence that the decision was made for an improper reason or to interfere with the ALJs' qualified judicial independence." *Id.* Vice Chairman Wagner dissented in part, agreeing with Judge Jordan's reduction of the furlough length to four days.

The ALJs timely petitioned for judicial review of the Board's final decision. *See* 5 U.S.C. § 7703(b)(1)(A). We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### A

The substantive issue presented is whether the Board erred in concluding that the Department had "good cause" for the challenged furloughs of the ALJs. 5 U.S.C. § 7521. We review the Board's decision to determine if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; was arrived at without following procedures required by law; or is unsupported by substantial evidence. 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Abrams v. Soc. Sec. Admin.*, 703 F.3d 538, 542 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

We have observed that "Congress intentionally failed to define 'good cause,'" leaving it "to be given meaning through judicial interpretation." *Brennan v. Dep't of Health & Human Servs.*, 787 F.2d 1559, 1561–62 (Fed.

Cir. 1986). The Supreme Court has explained that an agency can have "good cause" for an action against an ALJ even if the ALJ did not depart from the "good behavior" standard applicable to federal judges appointed under Article III of the Constitution. *Ramspeck v. Fed. Trial Exam'rs Conference*, 345 U.S. 128, 141–43 (1952). We have also explained that an agency lacks "good cause" to the extent it acts based "on reasons which constitute an improper interference with the ALJ's performance of his quasi-judicial functions." *Brennan*, 787 F.2d at 1563. And we have made clear that, as a general matter, we defer to the Board's reasonable interpretation of "good cause" because "the Board has exclusive rulemaking and adjudicatory authority with respect to section 7521." *Long v. Soc. Sec. Admin.*, 635 F.3d 526, 534 (Fed. Cir. 2011); *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

The Board here adhered to its longstanding view that "good cause" should be defined in a case-by-case manner. *Board Decision* ¶¶ 5, 6 (citing *Soc. Sec. Admin. v. Long*, 2010 M.S.P.B. 19 ¶ 13); *see also Soc. Sec. Admin. v. Mills*, 73 M.S.P.R. 463, 467–68 (M.S.P.B. 1996); *Soc. Sec. Admin. v. Goodman*, 19 M.S.P.R. 321, 328 (M.S.P.B. 1984). It affirmed that, to meet the good-cause standard, an adverse action must not be an attempt to interfere, or actually interfere, with an ALJ's "qualified judicial independence." *Board Decision* ¶ 5 (citing *Brennan*, 787 F.2d at 1563); *id.* ¶ 9 ("[W]hatever the reason for the action, it cannot be for a reason that interferes with the ALJs' qualified judicial independence."). The Board reiterated its position that "disparate treatment" of ALJs "must be part of the good-cause calculus." *Id.* ¶ 11; *see Fed. Drug Admin. v. Davidson*, 46 M.S.P.R. 223, 226 (M.S.P.B. 1990) ("[A]bsent any showing of disparate treatment with other [agency] employees, we will not interfere with the agency's management determination respecting how to structure the furlough."). Finally, the Board applied the "good

cause" requirement by asking if the agency had "sound business reasons" for its adopted furlough. *Board Decision* ¶ 13. That focus mirrors what the Board has said about non-ALJ furloughs under 5 U.S.C. § 7513. *See Chandler v. Dep't of the Treasury*, 2013 M.S.P.B. 74 ¶ 8 (an agency satisfies the standard for a furlough under § 7513 "by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a 'fair and even manner,'" quoting *Clark v. Office of Pers. Mgmt.*, 24 M.S.P.R. 224, 225 (M.S.P.B. 1984)).

We find nothing improper in the Board's adherence to those principles. The Board could reasonably proceed by case-by-case adjudication in applying the broad and context-dependent "good cause" standard to the wide variety of circumstances that may arise. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 202–03 (1947)). And the Board reasonably interpreted "good cause" in this context to focus on whether the Department had sound business reasons for the challenged furlough and, relatedly, whether the furlough resulted from disparate treatment of ALJs or from a reason inconsistent with decision-making independence. We see no basis in the statute or in the record of this case for reversing the Board's conclusion that those standards suffice to respect ALJs' "special status." *See Board Decision* ¶9.

In deciding what the "good cause" standard requires for ALJs in the context of a furlough of less than 30 days under 5 U.S.C. § 7521, the Board referred to its precedents interpreting (a) the standards for a furlough longer than 30 days applicable in a reduction-in-force proceeding under 5 U.S.C. § 3502 and (b) the standards for a furlough of non-ALJ employees under the "efficiency of the service" standard of 5 U.S.C. § 7513. *See Board Decision* ¶ 10 (citing *Schroeder v. Dep't of Transp.*, 60 M.S.P.R. 566, 570

(M.S.P.B. 1994); *Chandler*, 2013 M.S.P.B. 74 ¶ 9). The Board made clear, however, that it considered its interpretation of those standards as informing, but not controlling, its interpretation of the "good cause" standard of § 7521. *Id.* After all, the provisions, though related, are distinct in language and procedures. We have no need to explore the significance of the distinctions here. The Board interpreted "good cause" in § 7521 to embody the standards we have described, and we hold that interpretation to be reasonable.

We also have no basis for reversing the Board's conclusion that the challenged furloughs in this case met those standards. The ALJs do not argue that the Department lacked good cause to furlough them for some period. Instead, they argue that the Board abused its discretion, and lacked substantial-evidence support, in finding that the Department had good cause to furlough them for 5.5 days. The crux of their protest is that the Department had no good cause for imposing longer furloughs on them than on many other employees outside the Adjudication subaccount. But the Board had ample grounds to conclude that the Department had good cause for its decisions that produced that result.

A difference in furlough lengths alone does not constitute an improper outcome under the good-cause standard. The reason for the durational difference matters. Here, no evidence exists that the difference resulted from any determination that relied on ALJ status to impose a longer furlough, let alone a determination aimed at or causing an impairment of decision-making independence. *See Brennan*, 787 F.2d at 1563 (agency actions "based on reasons which interfere with the quasi-judicial functions" of ALJs cannot stand); *cf. Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative

influence on the outcome.").   Where there is no such evidence, there is no "disparate treatment" or other impropriety when different furloughs are simply the result of following neutral, sound "business reasons."

That is the situation here.  The Department was under tight constraints in carrying out the required budget sequester.  By order (in compliance with statutory requirements), the Department had to cut five percent in spending from the Management Salaries and Expenses account by the end of fiscal year 2013.  The Department then made a neutral determination that it would apply that percentage equally to each subaccount (program, project, or activity) within the account.

That determination was a reasonable one.  Indeed, it was required by 2 U.S.C. § 906(k)(2), which states that, "[e]xcept as otherwise provided, the same percentage sequestration shall apply to all programs, projects, and activities within a budget account."  The provision further clarifies, as relevant here, that the "programs, projects, and activities" are the ones "delineated in the appropriation Act or accompanying report for the relevant fiscal year covering that account."  2 U.S.C. § 906(k)(2).  For the Department of Labor, the 2013 appropriation acts carry forward the appropriations from the 2012 act.  Continuing Appropriations Resolution, 2013, Pub. L. No. 112-175, § 101, 126 Stat. 1313, 1313 (2012); Consolidated and Further Continuing Appropriations Act, 2013, Pub. L. No. 113-6, § 1101, 127 Stat. 198, 412.  The relevant portion of the 2012 act covers the Management Salaries and Expenses account, but does not itself delineate the Adjudication subaccount.  *See* Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, 125 Stat. 786, 1061.  But the accompanying budget report—to which § 906(k)(2) points in such circumstances—identifies all nine of the subaccounts the Department used for its sequester planning, including Adjudication.  H.R. Rep. No. 112-331, at 1173 (2011) (Conf. Rep.).

Perhaps the Department of Labor, after making the required cuts, had some discretion "to realign funds to protect mission priorities," as OMB suggested "may" be true for "some agencies." J.A. 1152. Even if that was so, however, the Department could reasonably decide not to offset the cuts here by shifting funds from another departmental function to the Office of ALJs.

As the Board concluded, there is no statutory or other basis for forcing the Department to give the ALJ function priority over other departmental functions. *See Board Decision* ¶ 10 ("The Board will not scrutinize an agency's decision . . . in a manner that second-guesses the agency's assessment of its mission requirements and priorities."). Moreover, the ALJs cannot claim that shifting funds to their Office was required by an established departmental practice. The only fund-shifting practice identified here was limited to allowing an organizational unit that controlled multiple subaccounts to shift funds from one to another in some circumstances.[2]  J.A. 532–33, 670–71. But there is no evidence that the Office of ALJs, which is itself an organizational unit within the Department, controlled multiple subaccounts, let alone subaccounts it could tap to reallocate funds that would have increased the Office's resources and thereby shortened furloughs. There was no evidence of a departmental practice to allow fund shifting in circumstances relevant to the ALJs' complaint here.

Applying the five-percent cut to the Adjudication subaccount produced the challenged length of ALJ furloughs after one further step, namely, equal allocation among the organizational units funded from the Adjudication subaccount—a step that the ALJs do not challenge (their fur-

---

[2]  The Department is organized into roughly thirty organizational units. *See Organizational Chart*, U.S. Dep't of Labor, http://www.dol.gov/dol/aboutdol/orgchart.htm.

loughs being generally similar to or shorter than fur-loughs imposed on others within the various Adjudication units). It is undisputed that a high share of the ALJ Office's budget is tied to non-discretionary spending and salaries, so that employee salaries for that Office had to bear a higher portion of the five-percent cut than in organizational units funded from subaccounts with a greater share of non-salary, discretionary spending. And it is undisputed that following this neutral method produced the 5.5-day furlough for the ALJs before us.

## B

In addition to substantively challenging the "good cause" determination, the ALJs challenge the Board's upholding of Judge Jordan's denial of their motion to compel discovery and exclusion of certain witness testimony. We have required a harmful abuse of discretion before overturning a Board procedural decision on discovery or admissibility of evidence. *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378–79 (Fed. Cir. 1988). We find no such abuse in this case.

The discovery requests were broad and not at all particularized to the decision-makers or their decisions leading to the furloughs.[3] The ALJs also did not set out with particularity why individual discovery requests should be granted, as a regulation requires. *See* 5 C.F.R. § 1201.73(c)(1). Moreover, there is no hint of any improper motivation that would suggest the need for follow-up inquiries, and for the reasons explained, the agency determination supporting the challenged action here is readily seen to be neutral, reasonable, and consistent with

---

[3] For example, Request for Production 6 sought "[a]ll documents prepared after January 1, 2009, regardless of source, related to the activities or performance of the [Office] including but not limited to documents evaluating, criticizing, or questioning the actions or judicial decisions of the [Office]." J.A. 317.

past practice and statutory directives on its face. In these circumstances, the Board committed no harmful abuse of discretion in upholding Judge Jordan's denial of the requests.

There was likewise no abuse in the Board's upholding of Judge Jordan's refusal to allow testimony by current ALJs about their perceptions of how their work affects the Department's core mission and how public opinion of the ALJs' judicial independence might be altered by a furlough. Testimony about the importance of ALJ activities to the Department's missions is, at a minimum, hardly needed; there is no dispute about that issue, and such testimony would not compel the Board to second-guess the Department's decision about how to treat its multiple missions. Moreover, general opinion testimony about the effect of furloughs on public opinion of ALJs' judicial independence can readily be rejected as simply too speculative. J.A. 396. The exclusion of such testimony also has not been shown to be harmful under the standards for assessing good cause that the Board adopted and that we have upheld.

## CONCLUSION

For those reasons, we affirm the decision of the Merit Systems Protection Board.

## **AFFIRMED**