# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## 2015 MSPB 26

Docket No. DC-0752-13-0959-I-1

## Gregory Einboden,[1]

## Appellant,

## v.

## Department of the Navy,

## Agency.

February 27, 2015

Gregory Einboden, King George, Virginia, pro se.

Michael L. Torres, Esquire, Norfolk Naval Shipyard, Virginia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Vice Chairman Wagner issues a separate dissenting opinion.

## OPINION AND ORDER

¶1     The appellant petitions for review of an initial decision that affirmed the agency's furlough action. For the following reasons, we DENY the appellant's petition for review and AFFIRM the initial decision AS MODIFIED by this Opinion and Order, still AFFIRMING the agency's furlough action. We

---

[1] Pursuant to 5 C.F.R. § 1201.36(a), this appeal was part of a consolidation, *Naval Sea Systems Command Dahlgren v. Department of the Navy*, MSPB Docket No. DC-0752-14-0267-I-1.

MODIFY the initial decision to clarify the administrative judge's nexus analysis, agreeing with his determination that the agency proved by preponderant evidence that the furlough action in this case promotes the efficiency of the service.

BACKGROUND

¶2   The agency's Naval Surface Warfare Center Dahlgren Division (NSWCDD) issued a decision notice furloughing the appellant for no more than 11 workdays from his NT-6 Manager position. *Einboden v. Department of the Navy*, MSPB Docket No. DC-0752-13-0959-I-1, Initial Appeal File (IAF), Tab 1 at 10-13, Tab 3 at 2.[2]  The proposal notice had informed the appellant that the action was "necessitated by the extraordinary and serious budgetary challenges facing the Department of Defense (DOD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on 1 March 2013," i.e., across-the-board reductions to federal budgetary resources.  IAF, Tab 1 at 14; *see* 2 U.S.C. § 900(c)(2) (as used in 2 U.S.C. chapter 20, subchapter I, "[t]he terms 'sequester' and 'sequestration' refer to or mean the cancellation of budgetary resources provided by discretionary appropriations or direct spending law").

¶3   On appeal to the Board, the appellant asserted that the agency should not have furloughed him because his salary is paid out of working capital/intragovernmental funds, not an account using funds appropriated by Congress to DOD or the Department of the Navy.  IAF, Tab 1 at 5.  The appellant also alleged that intragovernmental funds are generally exempt from sequestration under the Balanced Budget and Emergency Deficit Control Act of 1985 (BBEDCA)[3] and that no money was sequestered from the agency's working

---

[2] The agency ultimately furloughed the appellant for 6 days.  IAF, Tab 12 at 5.

[3] Pub. L. No. 99-177, Title II, Part C, 99 Stat. 1037, 1063-93 (codified in pertinent part as amended at 2 U.S.C. §§ 900-907d).

capital fund (WCF). *Id*. at 5-7. Thus, he asserted that there was no reason for his furlough because there was no extraordinary and serious budgetary challenge with respect to the NSWCDD, which he claimed had an abundance of customer orders and a significant, available cash balance. *Id*. at 7-8. The appellant asserted that funds from the Navy WCF Dahlgren Division were not transferred to any Operations and Maintenance Account, despite language in the proposal notice suggesting such a transfer would occur, and that funds that would have paid his salary but for the furlough were not moved to another account to fund, for example, warfighter operations. IAF, Tab 20 at 2. The appellant also alleged that the agency violated his due process rights and committed harmful error. IAF, Tab 1 at 6-8.

¶4        The administrative judge consolidated this appeal with other appeals from similarly-situated appellants. *Naval Sea Systems Command Dahlgren v. Department of the Navy*, MSPB Docket No. DC-0752-14-0267-I-1, Consolidated Appeal File (CAF), Tab 1; IAF, Tab 9. After a hearing, the administrative judge affirmed the furlough action. CAF, Tab 15, Initial Decision (ID) at 2, 30. The administrative judge found that the agency proved that the furloughs promoted the efficiency of the service by offering unrebutted evidence that it had to make significant spending cuts because of sequestration and that the furloughs, along with other measures, helped it avoid a deficit. ID at 17-18. He also held that the agency offered evidence that it imposed the furloughs uniformly with exceptions for limited categories of employees and that the furloughs were a reasonable management solution to the financial issues facing the agency. ID at 18-19.

¶5        The administrative judge further held that the agency provided the appellants with due process and that the appellants did not prove their affirmative defenses, including allegations that the agency was precluded by 10 U.S.C. § 129 and the BBEDCA from furloughing them. ID at 19-29. The administrative judge found that the BBEDCA exempted WCFs from sequestration orders only to the extent that those funds do not "rely upon direct appropriations" and that the

appellants did not show or even argue that the NSWCDD relied upon any funds other than those coming from direct appropriations received by its governmental customers. ID at 29. Thus, he held that the BBEDCA did not shield WCFs from the effects of sequestration. ID at 29. The administrative judge noted that, although an Office of Management and Budget (OMB) report appeared to classify the agency's WCF account, at least in part, as exempt from sequestration, he knew of no reason why the Board should consider an OMB report as controlling legal authority. ID at 29. He therefore gave the report little evidentiary weight and found it unpersuasive regarding the contested issues in the appeal. ID at 29.

¶6      Finally, the administrative judge found that, even assuming that WCF accounts are exempt from a sequester order, "that does not necessarily mean the Department could not furlough the employees whose salaries it paid from those WCF accounts." ID at 29. The administrative judge held that, although some appellants argued that WCFs do not constitute direct appropriations, they did not dispute that the funds received from governmental customers were direct appropriations. ID at 29. Thus, the administrative judge found that the $500 million the agency alleged it saved from furloughing WCF employees represented "$500 million less in sequestered direct appropriations that the WCFs' governmental customers would have needed to pay had the Department not furloughed WCF employees." ID at 29-30. The administrative judge held that, regardless of how WCFs were categorized, either as direct appropriations or something else, "statutory limitations regarding accounts that were subject to sequester do not necessarily constitute equivalent limitations with respect to which employees the agency could properly furlough." ID at 30.

## ANALYSIS

¶7      The appellant asserts on review that the agency did not rebut any of the testimony he provided at the hearing, that the evidence the agency presented is irrelevant to his furlough, and that the agency has presented no evidence as to

why the furlough of WCF employees was proposed, why the furlough took place in the absence of a sequester of WCFs, and why he was furloughed for 6 days when the alleged savings from the appellant's salary never left the NSWCDD. Petition for Review (PFR) File, Tab 1 at 3. The appellant contends that, although the proposal and decision notices relied upon the sequester, no sequester of funds occurred at NSWCDD. *Id*. at 4. The appellant further asserts that the administrative judge did not fully address evidence in the record relating to how WCFs operate and why they were exempt from sequestration. *Id*. at 5. The appellant contends that, given the agency's admission that the money saved from the furlough was "available" to be used, but was not in fact used to satisfy any funding shortfall, the agency could have furloughed him for fewer than 6 days, including 0 days, because there was no financial need to do so. [4] *Id*. In its response to the petition for review, the agency asserts that the appellant is attempting to expand the burden placed on the agency by requiring it to show that the specific funds used to pay his salary were affected by sequestration, even though there is no Board or court decision supporting such a requirement. PFR File, Tab 4 at 7.

¶8        A "furlough" is the placing of an employee in a temporary status without duties and pay due to a lack of work or funds or other nondisciplinary reasons. 5 U.S.C. § 7511(a)(5); 5 C.F.R. § 752.402. Furloughs of 30 days or less are reviewable by the Board under the "efficiency of the service" standard of 5 U.S.C. § 7513(a). *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 5 (2013). An agency satisfies this "efficiency of the service" standard in a

---

[4] The appellant asserts on review that the agency treated him differently from Department of the Air Force attorneys who were not furloughed. PFR File, Tab 1 at 13-14. Because the appellant did not raise this argument below, and he has not shown that it is based on new and material evidence not previously available despite his due diligence, we will not address it for the first time on review. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).

furlough appeal by showing, among other things, that the furlough was a reasonable management solution to the financial restrictions placed on it. *Id.*, ¶ 8.

¶9      The appellant essentially asserts that, under *Chandler*, there were no financial restrictions placed upon the NSWCDD that warranted his furlough because the NSWCDD paid his salary by means of WCFs that were not subject to a sequester order under the BBEDCA. Addressing this argument, therefore, requires an analysis of both the nature of WCFs in the federal government and the relevant provisions of the BBEDCA.

¶10      Under 10 U.S.C. § 2208(a), to control and account more effectively for the cost of programs and work performed in DOD, the Secretary of Defense may require the establishment of WCFs to (1) finance inventories of designated supplies and (2) provide working capital for industrial-type activities and commercial-type activities that provide common services within or among departments and agencies of DOD. WCFs are generally charged with the cost of certain supplies, services, and work performed, including applicable administrative expenses, and are reimbursed from available appropriations or otherwise credited for those costs. 10 U.S.C. § 2208(c). Subject to the authority and direction of the Secretary of Defense, the Secretary of each military department shall allocate responsibility for its functions, powers, and duties to accomplish the most economical and efficient organization and operation of the activities for which WCFs are authorized. 10 U.S.C. § 2208(e). The requisitioning agency may not incur a cost for services or work performed by industrial-type or commercial-type activities for which WCFs may be established that is more than the amount of appropriations or other funds available for those purposes. 10 U.S.C. § 2208(f). Finally, under 10 U.S.C. § 2208(r)(1), "Notification of transfers," notwithstanding any authority provided in section 2208 to transfer funds, the transfer of funds from a WCF, including a transfer to another WCF, shall not be made under such authority unless the

Secretary of Defense submits, in advance, a notification of the proposed transfer to the congressional defense committees in accordance with customary procedures. The amount of a transfer as described above that is made in a fiscal year does not count toward any limitation on the amount of transfers that may be made for that fiscal year under authority provided to the Secretary of Defense in a law authorizing or making appropriations for DOD. 10 U.S.C. § 2208(r)(2). Thus, a WCF is a type of intragovernmental revolving fund that operates as a self-supporting entity that conducts a regular cycle of businesslike activities and functions entirely from the fees charged for the services provided consistent with its statutory authority. IAF, Tab 21 at 53 (September 2005 U.S. Government Accountability Office Glossary of Terms Used in the Federal Budget Process).

¶11    The BBEDCA, as amended, requires the President, if the federal budget deficit exceeds a certain amount, to issue a sequestration order mandating across-the-board spending reductions to reach a targeted deficit level. *See* 2 U.S.C. § 901a(5)-(6); *Bowsher v. Synar*, 478 U.S. 714, 717-18 (1986); *Berlin v. Department of Labor*, 772 F.3d 890, 892 (Fed. Cir. 2014). The BBEDCA identifies, however, certain exempt programs and activities, including a list of budget accounts and activities that "shall be exempt from reduction" under any applicable sequestration order. 2 U.S.C. § 905(g)(1)(A). One such budget account or activity involves "[i]ntragovernmental funds, including those from which the outlays are derived primarily from resources paid in from other government accounts, except to the extent such funds are augmented by direct appropriations for the fiscal year during which an order is in effect." *Id.*

¶12    In a March 1, 2013 OMB Report to Congress on the Joint Committee Sequestration for FY 2013, the sequestrable budget amount for the Navy WCF is $24 million, with the sequester amount being only $2 million. IAF, Tab 21 at 43, 45. This report also notes that "[f]or intragovernmental payments, sequestration is applied to the paying account," while the funds "are generally exempt in the receiving account in accordance with section 255(g)(1)(A) of BBEDCA so that

the same dollars are not sequestered twice." IAF, Tab 21 at 46. President Obama's March 1, 2013 sequestration order for FY 2013 provides that all sequestrations shall be made in strict accordance with the requirements of the BBEDCA. *Id*. at 49. A June 2013 DOD Report on the Joint Committee Sequestration for FY 2013 appears to show that the Navy WCF received no appropriated funding for FY 2013 except for $24.2 million as part of the Disaster Relief Act of 2013 and that there was no sequestration for FY 2013 from the Navy WCF. *Id*. at 68-70.

¶13     The administrative judge interpreted 2 U.S.C. § 905(g)(1)(A) as not shielding WCFs from sequestration but also held, in the alternative, that, even if WCF accounts were exempt from sequestration, the agency could still furlough employees who were paid from those accounts. ID at 29-30. We need not decide whether the administrative judge's interpretation of section 905(g)(1)(A) is correct because we agree with the administrative judge's alternative analysis. The BBEDCA itself does not prohibit a furlough of WCF employees. Thus, even assuming that section 905(g)(1)(A) did exempt the NSWCDD's WCFs from a sequestration order, such an interpretation would not end our inquiry into whether there were financial restrictions placed on the agency and whether the furlough was a reasonable management solution to those restrictions. *See Chandler*, 120 M.S.P.R. 163, ¶ 8.

¶14     Regarding the existence of financial restrictions, the Under Secretary of Defense (Comptroller)/Chief Financial Officer of DOD averred that various factors, including sequestration, a misallocation of funds under a Continuing Resolution, and unexpectedly high wartime costs, created a $40 billion budgetary shortfall and that furloughs of all DOD civilians would save about $2 billion in FY 2013, including more than $500 million associated with reduced personnel costs in WCF activities. CAF, Tab 2, Navy Administrative Record at 4, 6, 11-12. He asserted that these WCF personnel savings "provide us the flexibility to adjust maintenance funding downward to meet higher-priority needs." *Id*. at 12. He

further averred that the Department of the Air Force expected to reduce funded orders in their WCFs by about $700 million to meet higher-priority needs, while the Department of the Army expected to reduce orders by $500 million. *Id*.

¶15 In *Yee v. Department of the Navy*, 121 M.S.P.R. 686, ¶¶ 9, 14 (2014), the Board held that, although the Department of the Navy is separately organized under the Secretary of Navy, it operates under the authority, direction, and control of the Secretary of Defense. Similarly, the Secretary of the Navy's responsibility for the operation of WCF activities is subject to the authority and direction of the Secretary of Defense. 10 U.S.C. § 2208(e). We also held in *Yee*, 121 M.S.P.R. 686, ¶ 14, that the Secretary of the Navy is responsible for the effective and timely implementation of policy, program, and budget decisions and instructions of the President or the Secretary of Defense relating to the functions of the Navy. Thus, the Board held that, although the appellants asserted that the Navy had adequate funding to avoid the furloughs, it was reasonable for DOD to consider its budget situation holistically, rather than isolating each individual military department's situation. *Id*. Similarly, we find that, although the NSWCDD may have had adequate funding to avoid a furlough of the appellant, it was reasonable for DOD to consider its budget situation holistically, rather than isolating the situation of each individual Navy organization or component.

¶16 We further find that the furlough action was a reasonable management solution to the financial restrictions set forth above. *See Federal Drug Administration v. Davidson*, 46 M.S.P.R. 223, 226 (1990) (even if a sequestration does not affect the funds used to pay for work that is to be performed by an employee, the agency can still institute a furlough action against the employee based on the agency's budgetary deficit). There is no indication in the record that the Secretary of Defense was prohibited from using savings resulting from the furloughs of WCF employees to address other budgetary needs. In fact, the law and the record suggest otherwise. As set forth above, a transfer of funds from a WCF may be made if the Secretary of Defense submits, in advance in accordance

with customary procedures, a notification of the proposed transfer to the congressional defense committees. 10 U.S.C. § 2208(r)(1). It appears that such transfers from WCFs have happened in the past. *See David R. Obey*, Comp. Gen. No. B-318724, 2010 WL 2546935 (June 22, 2010). Moreover, the declaration discussed above from the Under Secretary of Defense (Comptroller)/Chief Financial Officer of DOD reflects that personnel cost savings of $500 million from the furlough of WCF employees provided flexibility to adjust maintenance funding downward. The deciding official, who is also the Deputy Division Technical Director of the NSWCDD and the second-in-command on the civilian side of the organization, similarly testified that the agency saved "20 percent" during the 6 weeks in which employees were furloughed and that "the operating cost was available to be recalled, if need be, by the Agency." Hearing Transcript (HT) at 12-13, 31. The appellant does not assert that the savings could not have been used elsewhere. Rather, he contends that the savings from the furlough were not used elsewhere. PFR File, Tab 1 at 5.

¶17     The agency conceded that "no funds were actually sequestered or recaptured from the WCF at NSWCDD or any other WCF activity within the Agency." CAF, Tab 14 at 14; *see* HT at 38, 51 (testimony of the deciding official that the Dahlgren Division does not receive a direct operations and maintenance appropriation with which to pay salaries and that, during the days that the agency furloughed the appellant, there was money available at that time with which to pay the appellant's salary). The agency asserted that WCF activities are funded by Operations and Maintenance funds that "flow downwards" through each of the departments of DOD and that, "[b]y furloughing its employees, to include WCF employees, the Agency had the ability to not only decrease expenditures flowing down to operate WCF activities, but it also realized a 20% savings in operating costs that were available to be recapture[d] from the WCF if necessary." CAF, Tab 14 at 14-15. The agency contended that these savings, "although they may not have actually been recaptured by the Agency and reprogram[m]ed for

other things, were available and gave the Agency the flexibility to recapture and redistribute to fund higher priority items if the need arose." *Id*. at 15. There is no indication in the record that any of the customers of the NSWCDD reduced or planned to reduce their orders or payments to the NSWCDD as a result of the sequestration. In fact, it is possible that those customers simply could have continued to pay the NSWCDD for their orders and absorbed the effects of the sequestration in other ways. There is also no indication in the record explaining what the agency did with any savings it achieved from furloughing the appellant, who was paid by WCFs.

¶18     Nevertheless, the agency was not required to show that any of the funds saved from the appellant's furlough actually left the NSWCDD to be used for any other DOD purpose. *Cf. Cross v. Department of Transportation*, 127 F.3d 1443, 1447 (Fed. Cir. 1997) (finding the initiation of a reduction in force was proper when agency officials reasonably anticipated a budget shortfall). Rather, to meet the efficiency of the service standard, it is enough for the agency to show that the furlough action was a reasonable management solution at the time the action was taken. *Cf. In re Tinker AFSC/DP v. Department of the Air Force*, 121 M.S.P.R. 385, ¶¶ 21-22 (2014) (in determining the legitimacy of the reasons for a decision not to furlough certain employees when the agency asserts that it was precluded from doing so by law, rule, or regulation, the Board need not determine after the fact whether a decision not to furlough those employees was actually permissible; rather, the question is whether the agency reasonably and genuinely believed that it was precluded from furloughing that group of employees); *Clerman v. Interstate Commerce Commission*, 35 M.S.P.R. 190, 194 (1987) (recognizing that the appropriateness of an agency's decision to release employees by reduction in force because of staffing limitations is judged based on the agency's ceilings when the actions were taken, not on events that occur after the fact). We find, based on our determination that savings from the furlough of WCF employees

could have been used to address other higher-priority budgetary needs, that the agency has met that burden of proof by preponderant evidence in this case.[5]

¶19    Accordingly, we DENY the petition for review and AFFIRM the initial decision as modified by this Opinion and Order.

## ORDER

¶20    This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and

---

[5] The dissent, noting that the statute provides that an agency must demonstrate that its action "will" promote the efficiency of the service, would require the agency to provide evidence that the funds saved as a result of the furlough were actually used to protect wartime operations.  As stated above, however, the Board has long held that the efficiency of the service standard is met by showing that, when the agency took the action, the furlough was a reasonable management solution to the financial restrictions at issue.  Our determination that the agency met this burden is consistent with that precedent and it recognizes the practicalities involved in the agency's decisionmaking process, rather than reviewing it with the benefit of hindsight.

that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

<u>DISSENTING OPINION OF VICE CHAIRMAN ANNE M. WAGNER</u>

in

*Gregory Einboden v. Department of the Navy*

MSPB Docket No. DC-0752-13-0959-I-1

¶1     The majority opinion finds that the agency's furlough action promotes the efficiency of the service even though there is no indication that any savings generated by the furlough of the appellant, a working capital fund (WCF) employee, was transferred or used in any way to address the budgetary challenges facing the Department of Defense (DOD).  Because I believe that the majority has strayed from the Board's statutory responsibility to ensure that adverse action furloughs may only be sustained by the Board when they are taken for such cause as "will promote the efficiency of the service," I respectfully dissent.

¶2     Under 5 U.S.C. § 7513(a), an agency may take an action such as the furlough in this case "only for such cause as will promote the efficiency of the service."  Notably, section 7513(a) requires that the cause for the action "will" promote the efficiency of the service, and does not permit actions based on cause that only "may" or "could" promote the efficiency of the service.  *See Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-33 (Fed. Cir. 2004) (noting the distinction between the mandatory "will" and the discretionary "may").  The Board has recognized that something more than a mere possibility is required to meet the efficiency of the service standard.  In *Lara v. Mine Safety and Health Administration*, 10 M.S.P.R. 554, 556 (1982), for example, the Board held that an agency need not wait for a mine inspector to cause injury to himself or others because of his vision limitations as long as the likelihood of such event is "reasonably foreseeable."  Similarly, in *Doe v. National Security Agency*, 6 M.S.P.R. 555, 562 (1981), *aff'd sub nom. Stalans v. National Security Agency*, 678 F.2d 482 (4th Cir. 1982), the Board held that the deleterious effect of misconduct on the efficiency of the service may be either presently existent or

"reasonably foreseeable." In other words, the nexus requirement, for purposes of determining whether an agency has shown that its action promotes the efficiency of the service, means that there must be a "clear and direct relationship" between the articulated grounds for an adverse action and some legitimate government interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 585, 596 (1981), *modified by Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n.2 (1987).

¶3    The Board has long held that the efficiency of the service standard in a furlough case is met by showing that the furlough is a reasonable management solution to the financial restrictions at issue. *See Clark v. Office of Personnel Management*, 24 M.S.P.R. 224, 225 (1984); *see also Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 8 (2013). However, in order to continue to fulfill the statutory efficiency of the service standard in these types of cases, and consistent with such cases as *Lara* and *Doe,* I would find that, in order to prove that the furlough of a WCF employee was a reasonable management solution, there must be at least some indication that it was reasonably foreseeable that the savings from the furlough would address the budgetary challenges, thereby promoting the efficiency of the service.

¶4    Here, the notice of proposed furlough provides that "[t]his administrative furlough is necessitated by the extraordinary and serious budgetary challenges facing the Department of Defense (DOD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on 1 March 2013." Initial Appeal File (IAF), Tab 1 at 14. The proposal notice also provides that DOD "must and will protect wartime operations funding for our troops in harm's way," that this "inevitably means larger cuts in base-budget funding for the Operation and Maintenance (O&M) accounts," and that "[t]hus, the DOD will need funding in other accounts that can be used to provide the warfighters with what they need to protect national security and fight the war." *Id*. The clear implication from the proposal notice is that the funds saved as a result of the furlough will be used to protect wartime operations funding.

¶5　　Although an agency may be able to meet the efficiency of the service requirement in some other furlough case involving a WCF, I would find that the agency has not met that requirement here.  The majority's decision notes that, under 10 U.S.C. § 2208(r)(1), a transfer of funds from a WCF may be made if the Secretary of Defense submits, in advance, a notification of the proposed transfer to the congressional defense committees in accordance with customary procedures.  There is no evidence that DOD submitted or even planned to submit, in advance of the furlough or at any other time, such notification to the congressional defense committees with respect to funds saved from the furlough of employees at the Naval Surface Warfare Center Dahlgren Division (NSWCDD).  Nor is there any evidence in the record showing that it was reasonably foreseeable that the funds saved from the furlough of the appellant would otherwise actually be used to address the budgetary challenges facing DOD.  In the absence of such evidence, I would find that furloughing the appellant as an employee of a WCF entity has not been shown to be a reasonable management solution.  There has been no "clear and direct relationship" between the articulated grounds for the furlough of employees at the NSWCDD and a legitimate government interest.

¶6　　The cases relied upon by the majority are distinguishable from this case and do not warrant the outcome reached by the majority.  In *Cross v. Department of Transportation*, 127 F.3d 1443, 1447 (Fed. Cir. 1997), the court held that "[w]here agency officials reasonably and genuinely believe that the agency's abolition is inevitable and its funding is to be terminated, initiation of a [reduction in force (RIF)] is proper," and that conducting a RIF because of an anticipated shortage of funds does not require that the shortage exist at the time of the RIF.  As expressed in my separate opinion in *Chandler*, 120 M.S.P.R. 163, ¶¶ 1-9 (dissenting opinion of Vice Chairman Wagner), however, the RIF statute and regulations do not incorporate an "efficiency of the service" standard.  *See* 5 U.S.C. § 3502; 5 C.F.R. Part 351.  Thus, the holding in *Cross* is not persuasive

in the context of this adverse action furlough. Similarly, the Board in *In re Tinker AFSC/DP v. Department of the Air Force*, 121 M.S.P.R. 385, ¶ 21 (2014), held that, in determining the legitimacy of the reasons for a decision not to furlough certain employees when the agency asserts that it was precluded from doing so by law, rule, or regulation, the Board need not determine after the fact whether a decision not to furlough certain employees was actually permissible under applicable law, rule, and regulation. Rather, in deciding whether the agency's decision not to furlough certain employees was based on legitimate management reasons or reasons "personal" to a group of employees, the question is whether the agency reasonably and genuinely believed that it was precluded from furloughing that group of employees. *Id*. Because the agency furloughed all employees within the Eastern Region and there is therefore no question as to whether a decision not to furlough certain employees was permissible under law, rule, or regulation, the standard set forth in *Tinker* does not apply in this case. In *Clerman v. Interstate Commerce Commission*, 35 M.S.P.R. 190, 194-95 (1987), the Board held that the appropriateness of an agency's decision to release employees because of staffing limitations is to be judged based on the agency's ceilings when the actions were taken, not on events that occurred after the fact. This holding is consistent with my views in this dissenting opinion, as I too would judge the action based on what the agency has shown was reasonably foreseeable when it took the action.

¶7        In sum, I would reverse the agency's action furloughing the appellant because the agency has not shown under the facts of this case that the action promoted the efficiency of the service under 5 U.S.C. § 7513(a).


_____
Anne M. Wagner
Vice Chairman