NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LANCE MCDERMOTT,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

---

2025-1621

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-13-0633-C-1.

---

Decided:  February 6, 2026

---

LANCE MCDERMOTT, Seattle, WA, pro se.

YARIV S. PIERCE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by REGINALD THOMAS BLADES, JR., PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before MOORE, *Chief Judge*, CHEN, *Circuit Judge*, and KLEEH, *Chief District Judge*.[1]

PER CURIAM.

Lance McDermott—entitled to back pay for certain annual leave and applicable interest—appeals a decision by the Merit Systems Protection Board (Board) dismissing his petition for enforcement and petition for review because the Board found that the United States Postal Service (USPS) complied with its obligations to pay Mr. McDermott. *See McDermott v. United States Postal Serv.*, No. SF-0752-13-0633-C-1, 2025 WL 832178, at *1, *4 (M.S.P.B. Mar. 14, 2025) (*Final Order*) (S.A. 1–7).[2]  For the following reasons, we *affirm*.

## BACKGROUND

Mr. McDermott is a former USPS employee who served as a maintenance mechanic. *See id.* at *1.  On May 30, 2013, the USPS placed him on enforced leave because it was unable to determine whether he could safely work due to his color blindness. *See McDermott v. United States Postal Serv.*, No. SF-0752-13-0633-C-1, 2023 WL 3440849, at 3 (M.S.P.B.  May 9, 2023) (*Compliance Initial Decision*) (S.A. 25–32).[3]  On April 28, 2015, the Board sustained the USPS's decision placing Mr. McDermott on enforced leave and ordered the USPS to "restore [his] annual leave for the

---

[1]    Honorable Thomas S. Kleeh, Chief District Judge, United States District Court for the Northern District of West Virginia, sitting by designation.

[2]    "S.A." refers to the respondent's supplemental appendix.

[3]    Because the online version of the Compliance Initial Decision lacks pagination, we use the pagination employed in the Board's original document.  For example, "*Compliance Initial Decision*, 2023 WL 3440849, at 1" corresponds to S.A. 25.

period May 30, 2013 – June 7, 2013, and to pay [him] . . . the appropriate amount of back pay, if any, with interest." *Id.* at 1, 4. Mr. McDermott subsequently filed a petition for enforcement seeking to enforce the April 28, 2015 order. In response, the Board found that the USPS "has failed to comply with the Board's order" and ordered the USPS to "provide evidence" for compliance. *Id.* at 7.

On June 7, 2023, the USPS informed the Board that it had taken the actions identified in the Compliance Initial Decision. *See Final Order*, 2025 WL 832178, at \*2; *see McDermott v. United States Postal Serv.*, No. SF-0752-13-0633-C-1, 2024 WL 1828178, at \*4 (M.S.P.B. April 25, 2024). The USPS included, as a statement of compliance, copies of letters sent to Mr. McDermott informing him that it issued him checks for the back pay and interest along with photocopies of the checks and a copy of a back pay computation summary report. *See id.* In its April 25, 2024 Order, the Board found that the USPS did not provide sufficient documents to demonstrate whether the back pay and interest award was correct and whether the USPS is therefore compliant with the Compliance Initial Decision. *See id.* The Board ordered the USPS to submit satisfactory evidence of compliance including the demonstration that it properly calculated the back pay according to the appropriate amount of restored annual leave and related interest. *See id.* at \*5.

In response to the April 25, 2024 Order, the USPS submitted its evidence of compliance, including "a declaration explaining the amount of restored annual leave and the rate for such leave, calculations explaining the amount of interest, and time and attendance records." *Final Order*, 2025 WL 832178, at \*4. The USPS paid Mr. McDermott $1,040.94 based on the restoration of 45.5 hours of annual leave. *See* S.A. 173, 176. The USPS also paid him $225.75 for interest calculated using the first date during the first pay period when Mr. McDermott separated from the Postal Service, December 7, 2019. *See* S.A. 179. Mr. McDermott

challenged the USPS's method of calculating the back pay because "the declarant is not the back pay coordinator responsible for personally completing the necessary back pay forms." *Final Order*, 2025 WL 832178, at *4. The Board determined the USPS to be in compliance, rejecting Mr. McDermott's arguments for not identifying "any specific errors in the amounts calculated by [USPS]." *Id.* Accordingly, the Board dismissed Mr. McDermott's petition for enforcement and petition for review.

Mr. McDermott now seeks review of the Board's Final Order. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## STANDARD OF REVIEW

We review the Board's decision to determine if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Berlin v. Dep't of Labor*, 772 F.3d 890, 894 (Fed. Cir. 2014) (internal citation omitted).

## DISCUSSION

On appeal, Mr. McDermott raises numerous arguments for issues outside the scope of the Final Order.[4] *See, e.g.,* Pet'r's Informal Br. 7 (challenging an unrelated Board order), 10 (arguing that the USPS and the Board lack power to place him on an enforced leave), 19 (disputing

---

[4]    Mr. McDermott listed the Board's April 28, 2015 decision corresponding to MSPB Docket No. SF-0752-13-0633-I-1. *See* Pet'r's Informal Br. 1. That case is not before us, because the April 28, 2015 initial decision is not the initial decision that corresponds to the Final Order. Similarly, issues regarding the enforced leave are not before us.

whether his colorblindness is a disability), 28 (appealing the USPS's enforced leave action).  Rather, the issue before us is whether substantial evidence supports the Board's determination that the USPS complied with its obligations under the Compliance Initial Decision.

On that issue, Mr. McDermott raises two arguments: (1) the Compliance Initial Decision ordered the USPS to pay him 64 hours of back pay and restore 64 hours of leave for a total of 128 hours (instead of 45.5 hours); and (2) the interest on back pay should run from May 30, 2013 (instead of the first date of first pay period for which back pay is payable, which is December 7, 2019).  *See* Pet'r's Informal Br. 11–12.

Both arguments are unpersuasive.  As to the former, Mr. McDermott misreads the Compliance Initial Decision. The Compliance Initial Decision ordered the USPS to "restore [his] *annual leave* for the period May 30, 2013 – June 7, 2013."  *See Compliance Initial Decision*, 2023 WL 3440849, at 4 (emphasis added).  The USPS did just what it was ordered.  After noting that the period spans over two pay periods, it determined that Mr. McDermott used 5.5 hours of annual leave during the first pay period and 40 hours of annual leave during the second pay period through June 7, 2013.  S.A. 151 (citing its payroll journals, S.A. 156–58), 153.  It then sent Mr. McDermott a check for his back pay in the amount of $1,040.94 corresponding to the restored 45.5 hours of annual leave.  S.A. 166, 173.  In view of the submitted evidence, the Board reasonably concluded that the USPS "is in compliance with its outstanding compliance obligations."  *See Final Order*, 2025 WL 832178, at *4.

As to his second argument, Mr. McDermott again misreads the Compliance Initial Decision.  The Compliance Initial Decision did not state that the interest should run from May 30, 2013; rather, it provided that the interest should be calculated "in accordance with the Office of

Personnel Management's regulations." *See Compliance Initial Decision*, 2023 WL 3440849, at 4.  Here, there is no indication that the USPS deviated from the relevant regulations.  *See* 5 C.F.R. § 550.1203(a) ("An agency must make a lump-sum payment for accumulated and accrued annual leave when an employee," among other things, "[s]eparates or *retires* from the Federal service") (emphasis added); *see* 5 C.F.R. § 550.806(a)(1) ("Interest begins to accrue on the date or dates . . . on which the employee would have received the pay . . . .").  For example, the USPS calculated the interest to run from December 7, 2019—the first date of the first pay period when Mr. McDermott retired.  S.A. 3, 179.  This is consistent with the Board's finding that "[h]is last day in a pay status with the agency was December 10, 2019.  Thus, as of that date, he became entitled to the value of his restored leave through the issuance of back[]pay." *See Final Order*, 2025 WL 832178, at *1.  And Mr. McDermott does not explain why the interest should run from May 30, 2013.  As the Board noted, his "general charges of error do not rebut the agency's detailed and specific evidence, because they do not make specific, nonconclusory, and supported assertions of continued noncompliance." *See Final Order*, 2025 WL 832178, at *4 (internal citation omitted).  Accordingly, substantial evidence supports the Board's determination that the USPS complied with its obligations under the Compliance Initial Decision.

## CONCLUSION

We have considered Mr. McDermott's remaining arguments and find them unpersuasive.  For the above reasons, the Board properly dismissed Mr. McDermott's petition for enforcement and petition for review.  We therefore *affirm*.

## AFFIRMED

## COSTS

No costs.