## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SCOTT CARPENTER,<br>         Appellant, | DOCKET NUMBER<br>DC-0752-13-2215-B-1 |
|       v. | |
| DEPARTMENT OF THE NAVY,<br>         Agency. | DATE: April 4, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Scott Carpenter, Kensington, Maryland, pro se.

James M. Metcalfe, Esquire, Portsmouth, Virginia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the remand initial decision, which affirmed the furlough because it promoted the efficiency of the service. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to supplement the administrative judge's conclusion that the agency applied the furlough in a fair and even manner, we AFFIRM the remand initial decision.

## BACKGROUND

¶2 The appellant, an ND-04 mechanical engineer at the agency's Naval Surface Warfare Center, Carderock Division, filed a Board appeal challenging the agency's decision to furlough him. *Carpenter v. Department of the Navy*, MSPB Docket No. DC-0752-13-2215-I-1, Initial Appeal File (IAF), Tab 1. His appeal was consolidated with the appeals of other similarly situated individuals who were furloughed. *NSSC II v. Department of the Navy*, MSPB Docket No. DC-0752-14-0845-I-1, Consolidation Appeal File (CAF), Tabs 1, 11. After holding a hearing, CAF, Tab 12, Hearing Compact Diskette (HCD), the administrative judge issued an initial decision in which he upheld the furlough because it promoted the efficiency of the service, CAF, Tab 15, Initial Decision.

¶3 The appellant filed a petition for review. *Carpenter v. Department of the Navy*, MSPB Docket No. DC-0752-13-2215-I-1, Petition for Review File, Tab 1. The Board found that the administrative judge should have granted the appellant's discovery requests related to overtime given to similarly situated individuals, vacated the administrative judge's determination that the furloughs promoted the

efficiency of the service, and remanded the appeal for further adjudication. *Carpenter v. Department of the Navy*, MSPB Docket No. DC-0752-13-2215-I-1, Remand Order (May 11, 2015).

¶4 On remand, the administrative judge granted in part the appellant's motion to compel in accordance with the Board's remand order. Remand File (RF), Tab 3. In the remand initial decision, the administrative judge noted that he had already determined that the agency was facing a lack of funds and that the furlough constituted a reasonable management solution to the financial restrictions placed on it. RF, Tab 19, Remand Initial Decision (RID) at 4, 6. The administrative judge further found that overtime was not strictly prohibited, the agency's policy allowed it to be used judiciously, and the record did not establish that the agency used it to offset the effects of the furlough on any individuals. RID at 5-6. He therefore concluded that the furlough was applied in a fair and even manner and that the furlough promoted the efficiency of the service. RID at 6-7.

¶5 The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. Remand Petition for Review (RPFR) File, Tabs 1, 4-5. The appellant also has filed a motion to accept his petition for review filing as timely. RPFR file, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6 On review, the appellant challenges the administrative judge's discovery rulings and analysis regarding Interrogatories 12 and 15 and his conclusion that the furlough promoted the efficiency of the service. RPFR File, Tab 1 at 4-11. The appellant also appears to assert that the administrative judge violated his due process rights and was biased against him. *Id*. at 5, 9. We have considered these arguments, but we conclude that a different outcome is not warranted.[2]

---

[2] In light of our disposition, we need not address the timeliness of the petition for review.

<u>The administrative judge's discovery rulings did not constitute an abuse of discretion.</u>

¶7 The Board will not reverse an administrative judge's rulings on discovery matters absent an abuse of discretion. *Wagner v. Environmental Protection Agency*, 54 M.S.P.R. 447, 452 (1992), *aff'd*, 996 F.2d 1236 (Fed. Cir. 1993) (Table). The abuse of discretion standard is "a very high standard" and allows for "great deference." *Pecard v. Department of Agriculture*, 115 M.S.P.R. 31, ¶ 15 (2010) (citing *Lipscomb v. Department of Defense*, 69 M.S.P.R. 484, 487 (1996)). We find no abuse of discretion in the administrative judge's discovery rulings regarding Interrogatories 12 and 15.

¶8 Regarding Interrogatory 12, the administrative judge below ordered the agency to provide the number of "*similarly situated*" Navy civilians who worked in excess of 64 hours per pay period during any pay period in which they were furloughed and the total number of hours worked in excess of 64 hours per pay period for those workers subject to furlough. RF, Tab 3 (italics in original). The agency first provided information for all of the individuals in Code 80, the appellant's code section at the West Bethesda location.[3] RF, Tab 6 at 9, Tab 8 at 2. The agency subsequently agreed[4] to provide the appellant with the overtime and compensatory hours records for all "ND" scientists and engineers employed

---

[3] The deciding official testified that a "code" is "an organizational element" such as a "group or team working in the same department." HCD.

[4] On review, the appellant challenges the administrative judge's statement in the remand initial decision that the parties agreed that the agency would turn over this information. RPFR File, Tab 1 at 5-6; RID at 3. Rather, it appears from the Order and Summary of Telephonic Status Conference that only the agency agreed to provide this information. RF, Tab 8 at 2. Because we find no abuse of discretion in the administrative judge's discovery rulings, any error or misstatement in this regard does not prejudice the appellant and does not warrant reversal of the remand initial decision. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

at West Bethesda or the Washington Navy Yard.  RF, Tab 8 at 2.[5]  It appears that the administrative judge found that the agency's production of information was responsive to Interrogatory 12.  *Id*.; RID at 3.  On review, the appellant asserts that the agency's response was deficient because "similarly situated" means "all furloughed employees."  RPFR File, Tab 1 at 6 (emphasis in original).

¶9    In evaluating whether individuals are similarly situated, it is appropriate to apply reduction-in-force competitive level principles.  *Weathers v. Department of the Navy*, 121 M.S.P.R. 417, ¶ 8 (2014).  Generally, a competitive area must be defined solely in terms of the agency's organizational unit(s) and geographical location.  *Id.*  The minimum competitive area is a subdivision of the agency under separate administration within the local commuting area.  *Id.*; *see* 5 C.F.R. § 351.402(b).

¶10    The appellant's broad reading of "similarly situated" is inconsistent with this precedent.  Rather, we find that the agency's production of information related to hours (overtime and otherwise) worked by scientists and engineers in the appellant's code section and pay band at the West Bethesda and Washington Navy Yard locations satisfies its obligation to produce information regarding similarly situated employees as requested in Interrogatory 12.  We therefore find no abuse of discretion.

¶11    Regarding Interrogatory 15, the administrative judge ordered the agency to provide information regarding the process for determining the number of total furlough hours for each employee who was *"similarly situated"* to the appellant.  RF, Tab 3 (italics in original).  In response, the agency stated that it "followed the direction provided from the Secretary of Defense . . . and the Department of the Navy . . . and furloughed people accordingly."  RF, Tab 6 at 10.  The agency also directed the appellant to several submissions in its electronic administrative

[5] The agency clarified that it would not provide information for any ND scientists and engineers who worked for other commands but were located at West Bethesda or the Washington Navy Yard.  RF, Tab 9 at 4-5.

record. *Id.*; *see* Department of the Navy Administrative Record for FY 2013 Furlough Appeals, *available at* http://www.mspb.gov/furloughappeals/navy2013.htm (Navy Administrative Record), Tabs 3, 6, 8, 12. We agree with the administrative judge that the agency's response complied with Interrogatory 15 because the cited documents explain in general terms the method by which the agency decided to furlough employees and the amount of hours that employees would be furloughed. RF, Tab 8 at 3. The appellant's explanation on review that he was seeking a formula that the agency used to calculate the number of furlough hours for each agency working capital fund employee, RPFR File, Tab 1 at 10-11 (internal citations omitted), appears to be seeking information about how the agency structured the furlough. Such information is beyond the scope of the Board's review. *See Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶¶ 35-36 (2013) (stating that there are many ways in which agency management could structure the furlough but it is not the Board's place to select from among them). We similarly find no abuse of discretion in the administrative judge's conclusion that the agency complied with Interrogatory 15.

The furlough promoted the efficiency of the service.

¶12     An agency meets its burden of proving that a furlough promotes the efficiency of the service by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a fair and even manner. *In re Tinker AFSC/DP v. Department of the Air Force*, 121 M.S.P.R. 385, ¶ 14 (2014); *Chandler*, 120 M.S.P.R. 163, ¶ 8. In our Remand Order, we affirmed the administrative judge's conclusion that the furloughs were a reasonable solution to the financial restrictions placed on the agency. RF, Tab 1 at 4 (discussing *Einboden v. Department of the Navy*, 122 M.S.P.R. 302, ¶ 15, *aff'd*, 802 F.3d 1321 (Fed. Cir. 2015)).[6] The only

---

[6] Accordingly, we need not address the appellant's argument to the contrary in his reply brief. RPFR File, Tab 5 at 8.

issue before us is whether the agency determined which employees to furlough in a fair and even manner.

¶13        To resolve this issue, we have considered the appellant's arguments regarding the agency's approval of overtime during the furlough period.  RPFR File, Tab 1 at 6-9; *see Chandler*, 120 M.S.P.R. 163, ¶ 14 (stating that an agency's decision to award certain employees overtime pay may be relevant to whether the agency applied the furlough uniformly and consistently).  We modify the remand initial decision to supplement the administrative judge's analysis, but we agree with his conclusion that the agency applied the furlough in a fair and even manner.

¶14        The Board has held that an agency's use of overtime payments to relieve certain employees but not others of the financial consequences of the furlough may be sufficient to show that the furlough did not meet the efficiency of the service standard.   *Chandler*, 120 M.S.P.R. 163, ¶ 14.   The efficiency of the service standard encompasses issues relating to the uniform and consistent application of the furlough, including whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without legitimate management reasons.  *Id.*, ¶ 9.  The agency must treat similar employees similarly and must justify any deviations with legitimate management reasons.  *Id.*, ¶ 8.

¶15        The record reflects that the agency had a policy regarding overtime.  RF, Tab 18, Exhibit 1.   The policy stated, in pertinent part, that "[o]vertime or compensatory time shall be used judiciously, and only for the highest priority tasks" and "overtime may not be used to compensate for lost productivity due to [the] furlough."  *Id.*  The Board has held that an agency's decision to adopt a policy under which it permitted the use of overtime to meet mission-critical needs is a spending matter within the agency's sound discretion. *Kelly v. Department of the Army*, 121 M.S.P.R. 408, ¶ 13 (2014).

¶16    The appellant makes the following arguments on review:  (1) the agency did not follow this policy, as evidenced by the fact that "ten employees were relieved by exactly the number of furlough hours they were assigned"; (2) the agency failed to prove that it did not use overtime hours to relieve these ten employees from the financial impacts of the furlough; and (3) the volume of overtime hours worked by employees at Carderock Division "casts considerable doubt" that the furlough promoted the efficiency of the service.  RPFR File, Tab 1 at 6-8.  We are not persuaded by these arguments.

¶17    The fact that ten similarly situated employees may have received the same number of overtime hours as furlough hours does not—standing alone—warrant the conclusion that overtime was given to alleviate the financial consequences of the furlough or that the agency failed to follow its overtime policy.  Rather, in addition to the ten employees mentioned above, many other ND scientists and engineers in code 80, including the appellant,[7] worked overtime hours during the furlough period.  RF, Tab 7 at 6-37, Tab 17 at 8-114.  This evidence does not support the appellant's assertion that the agency's use of overtime was improper.[8] *See Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 10 (2013) (stating that in determining whether the agency structured a furlough in a fair and even manner, the Board will not scrutinize an agency's decision in such a way that second

---

[7] The appellant worked 31 hours of overtime during the furlough period.  RF, Tab 17 at 17.

[8] We have considered the appellant's assertion that the administrative judge violated his due process rights by first finding that the other employees were similarly situated to him but then concluding in the remand initial decision that he did not prove that the ten employees were similarly situated.  RPFR File, Tab 1 at 9; RID at 6.  We modify the remand initial decision to clarify that the burden is on the agency to prove that the furlough promotes the efficiency of the service.  *See Chandler*, 120 M.S.P.R. 163, ¶ 8.  We also assume for the purposes of our analysis that these ten individuals were similarly situated to the appellant.  However, for the reasons discussed herein, the evidence as a whole supports the conclusion that the agency applied the furlough in a fair and even manner.

guesses the agency's assessment of its mission requirements and priorities), *aff'd sub nom. Berlin v. Department of Labor*, 772 F.3d 890 (Fed. Cir. 2014).

¶18    In fact, there is no evidence that the agency's approval of overtime was at all connected to the furlough. The deciding official testified that he complied with the guidance provided to him, including a May 21, 2013 Memorandum which stated that Budget Scheduling Office Commanders "may not adjust employee work schedules to replace lost productivity or lost compensation as a result of the furlough." HCD; Navy Administrative Record, Tab 8.[9] The deciding official testified without contradiction that he determined which employees to furlough based on whether the individual employee occupied a position that had been excepted from the furlough. HCD; CAF, Tab 6 at 34-36. The appellant has not identified on review any individual who was improperly excepted from the furlough, nor does he assert that he should have been excepted from the furlough.

¶19    Based on our review of the record, we conclude that the agency applied the furlough fairly and evenly. *See Rodgers v. Department of the Navy*, 122 M.S.P.R. 559, ¶ 16 (2015) (affirming the administrative judge's conclusion that the agency fairly and evenly applied the furlough in the appellant's situation because, among other things, there was no indication in the record that the appellant or other Navy Munitions Command employees were targeted for personal reasons or that the agency exempted any employees without a legitimate management reason). We also affirm the administrative judge's conclusion that the furlough promoted the efficiency of the service.

---

[9] The May 21, 2013 Memorandum also referenced a February 21, 2013 Memorandum which stated that major commands "may not use contract funding or premium pay (e.g., compensatory time or overtime) to offset lost time under the furlough." Navy Administrative Record, Tabs 8, 25.

The appellant did not prove administrative judge bias.

¶20    In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). The appellant has not made such a showing.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The remand initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in

title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                              _____
                                            William D. Spencer
                                            Clerk of the Board

Washington, D.C.