# United States Court of Appeals for the Federal Circuit

_____

**GREGORY EINBODEN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

_____

2015-3117

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-13-0959-I-1.

_____

Decided: October 1, 2015

_____

GREGORY EINBODEN, King George, VA, pro se.

AMANDA TANTUM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

_____

Before PROST, *Chief Judge,* DYK, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge*.

Gregory Einboden appeals a decision of the Merit Systems Protection Board ("the Board" or "MSPB") denying his petition for review and affirming the decision of the Department of the Navy ("Navy") to furlough him for six days in July and August of 2013 pursuant to sequestration legislation. We find no reversible error in the Board's decision. Accordingly, we affirm.

## BACKGROUND

This case arises as a result of sequestration legislation adopted by Congress. In August of 2011, Congress passed the Balanced Budget and Emergency Deficit Control Act of 2011 ("BBEDCA"), which called for automatic across-the-board spending cuts if certain deficit reduction legislation was not enacted by January 15, 2012. Congress failed to pass the necessary deficit reduction legislation, which triggered the required automatic budget cuts starting March 1, 2013. Pursuant to the BBEDCA, the Office of Management and Budget ("OMB") prepared a report for the Joint Committee Sequestration for Fiscal Year 2013, which outlined OMB's calculations as to how the automatic budget cuts were to be made. *See* 2 U.S.C. § 901a. The reduction in spending authority for the Department of Defense amounted to approximately $37 billion and required the furlough of approximately 650,000 civilian employees.

Mr. Einboden is a civilian employee of the Navy, serving as counsel for the command group of the Naval Surface Warfare Center Dahlgren Division ("Dahlgren"). Dahlgren is a Navy working capital fund activity, which means that it functions "entirely from the fees charged for the services [provided] consistent with [its] statutory authority." U.S. GOV'T ACCOUNTABILITY OFF., GAO-05-734SP, A GLOSSARY OF TERMS USED IN THE FEDERAL

BUDGET PROCESS 101 (2005). When another government agency asks Dahlgren for support, that agency transfers money from its appropriation to the Dahlgren working capital fund to compensate Dahlgren for its work on behalf of the agency. *See* 10 U.S.C. § 2208 (authorizing the creation of working capital funds). According to the OMB report, sequestration is applied to the paying account and generally not to accounts like the Navy working capital fund to the extent that its funds were received from other agencies so that "the same dollars are not sequestered twice." [1] OFF. OF MGMT. AND BUDGET, OMB REPORT TO THE CONGRESS ON THE JOINT COMMITTEE SEQUESTRATION FOR FISCAL YEAR 2013 70 (2013).

On May 28, 2013, Mr. Einboden received a "Notice of Proposed Furlough" advising him that the Navy intended to furlough him for up to eleven days because of "the extraordinary and serious budgetary challenges . . . , the most serious of which is the sequester." S.A. 158. On June 3, Mr. Einboden responded to the notice, asserting that Dahlgren was not subject to sequestration. The Navy replied on June 24, finding that "the reasons for the proposed furlough, as stated in the notice of the proposal, remain valid." S.A. 151. The furlough period for Mr. Einboden, as for other civilian Navy employees, began on July 8, 2015, though the furlough days were not consecutive.

Because of other cost-cutting measures and reprogramming requests approved by Congress, the Department of Defense was able to close the budget gaps more easily than it had initially anticipated. On August 6, the

---

[1] The Navy working capital fund had $24 million from disaster funding, which was subject to sequestration as a direct appropriation.

Secretary of Defense announced that the furlough of civilian defense employees would be reduced from 11 days to six days. Though money saved by the six-day furlough could have been transferred from the Navy working capital fund to other activities with appropriate notice to the congressional defense committees, *see* 10 U.S.C. § 2208(r)(1), no funds were transferred from Dahlgren's working capital fund as a result of the furloughs.

Mr. Einboden turned to the MSPB, asserting that the Navy had improperly furloughed him. An administrative judge ("AJ") heard a consolidated appeal from all civilian employees of Dahlgren. The AJ upheld the appeal from the decision furloughing Mr. Einboden, finding (among other things) that the furlough was a "reasonable management solution to the financial issues facing the agency" and that the notice of proposed furlough was not procedurally deficient. S.A. 32, 47.

Mr. Einboden then petitioned the full Board for review. The Board denied review and affirmed the decision of the AJ upholding the furlough. The majority of the Board noted that "although [Dahlgren] may have had adequate funding to avoid a furlough . . . , it was reasonable for DOD to consider its budget holistically, rather than isolating the situation of each individual Navy." S.A. 9. Accordingly, "the agency was not required to show that any of the funds saved from the appellant's furlough actually left [Dahlgren] to be used for other DOD purpose." S.A. 11. One member dissented on this point, contending that "there must be at least some indication that it was reasonably foreseeable that the savings from the furlough would address the budgetary challenges." S.A. 15. Mr. Einboden now petitions for review of the Board's decision.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9). This court's authority to review a decision of the Board is prescribed by statute. Specifically, we must affirm unless the Board's decision is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## DISCUSSION

Among the statutory protections with respect to adverse employment actions for government employees is section 7513 of title 5 of the United States Code, which states that "[u]nder regulations prescribed by the Office of Personnel Management, an agency may take an [adverse action] against an employee only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). Further, an employee must be provided written notice that must "stat[e] the specific reasons for the proposed [adverse] action," an opportunity "to answer" and provide "documentary evidence in support of the answer", and a "written decision." 5 U.S.C. § 7513(b). A furlough of less than thirty days is an adverse action. 5 C.F.R. § 752.401(a)(5). The six-day furlough of Mr. Einboden was thus an adverse action. The Navy was required to establish that that the action "will promote the efficiency of the service." 5 U.S.C. § 7513(a).

Mr. Einboden contends that the Navy working capital fund was not subject to sequestration pursuant to the OMB report. Because Dahlgren's funds were not sequestered, Dahlgren never was facing a budgetary shortfall, and therefore the Navy cannot demonstrate that his furlough promoted the efficiency of the service.

We reject Mr. Einboden's contention that Dahlgren could not have reasonably anticipated a shortage of

funding at the time the decision to furlough was made and that Dahlgren's budget is unaffected by agency-wide cuts.   While working capital funds were treated as being exempt from sequestration,[2] sequestration was applied to agencies that would be paying working capital fund entities (like Dahlgren).  When agencies ordering services from Dahlgren had their budgets sequestered, those agencies could and would prioritize their spending, and Dahlgren could have anticipated receiving less funding from those agencies and thus suffering a funding short-fall.   The flexibility from the furlough of working capital fund employees allowed the Navy to potentially "address other higher-priority budgetary needs," S.A. 11-12, by transferring money from the working capital fund pursuant to 10 U.S.C. § 2208(r)(1).

Mr. Einboden contends that the Navy failed to show that his unpaid salary was used to meet a budgetary shortfall and thus failed to demonstrate that the furlough would "promote the efficiency of the service."  We reject Mr. Einboden's contention that the Navy be required to show actual re-programming of the funds saved by his furlough.  It is not our role to second guess agency decisions as to how to prioritize funding when faced with a budget shortfall.  *See Berlin v. Dep't of Labor*, 772 F.3d 890, 894–95 (Fed. Cir. 2014).  The Board interpreted the statute's requirement that the furlough "will promote the efficiency of the service" as requiring that the decision be a reasonable management solution to the financial restrictions placed on the agency and that the agency determine which employees to furlough in a fair and even

---

[2]    We accept, without deciding, the position that the Navy working capital fund was not subject to sequestration as the OMB report suggests.

manner. S.A. 32. This interpretation is correct. It is immaterial whether subsequent events ameliorated these concerns. These management decisions are inherently prospective. *See Cross v. Dep't of Transp.*, 127 F.3d 1443, 1447 (Fed. Cir. 1997).

We give wide berth to agency decisions as to what type of adverse action is necessary to "promote the efficiency of the service," provided that the agency's decision bears some nexus to the reason for the adverse action. *See Doe v. Dep't of Justice*, 565 F.3d 1375, 1379 (Fed. Cir. 2009) (an agency meets the "efficiency of the service" standard when it demonstrates the existence of a nexus between the reason for adverse action and the work of an agency); *Webster v. Dep't of Army*, 911 F.2d 679, 685 (Fed. Cir. 1990) (when deciding what penalty for misconduct promotes the efficiency of the service "deference is given to the agency's judgment . . . unless . . . it amounts to an abuse of discretion" (alterations, citations, and internal quotation marks omitted)). We have also accepted the very standard utilized by the Board here under similar circumstances. *See Berlin*, 772 F.3d at 894–95. The Navy's decision has not been shown to be unreasonable.

We also reject Mr. Einboden's argument that the Navy implemented the furloughs unfairly because he was treated differently than other civilian employees. Mr. Einboden makes no claim that he was treated differently than other employees in the Navy, but instead alleges that he was treated differently than other civilians in the Air Force—contrary to the requirement that the furlough be implemented in a "fair and even manner." *See Chandler v. Dep't of the Treasury*, 120 M.S.P.R. 163, ¶8 (2013). When the DOD made the decision to perform furloughs in response to the budget shortfall, it mandated a furlough of all civilian employees except certain categories—leaving it to the various sub-agencies to make decisions as

to which employees were exempt from sequestration. The specific decision to furlough Mr. Einboden was made by the Navy. The Navy was not obligated to implement the DOD directive in the same way as the Air Force, assuming the Navy's decision was consistent with DOD guidance (and here there is no contention that it is not). Management decisions as to which individual employees to furlough in the face of budget shortfalls are within the sound discretion of agency officials, *see, e.g., Berlin,* 772 F.3d at 896, and the Navy did not act arbitrarily nor capriciously in making a different decision than the Air Force in implementing the DOD guidance.

Finally, we find Mr. Einboden's contentions alleging procedural deficiencies in the notice to furlough to be without merit.

**AFFIRMED**

Costs

No costs.