NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JASON SMITH,**
*Petitioner*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent*

---

2015-3206

---

Petition for review of the Merit Systems Protection Board in Nos. SF-0752-13-1253-I-1, SF-0752-14-0283-I-1.

---

Decided: January 13, 2016

---

JASON SMITH, Woodbridge, VA, pro se.

ALEXIS J. ECHOLS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

---

Before MOORE, O'MALLEY, and WALLACH, *Circuit Judges.*

PER CURIAM

Jason Smith appeals the Merit Systems Protection Board's ("Board") decision that affirmed the decision by the Department of the Air Force ("Air Force") to furlough him for six days in July and August 2013 as a result of the sequestration legislation. Because we find no reversible error in the Board's decision, we *affirm*.

BACKGROUND

This case is one of many that arise from the sequestration legislation (*i.e.*, the Budget Control Act of 2011 and the American Taxpayer Relief Act of 2012) adopted by Congress. *See, e.g., Nat'l Fed'n Fed. Emps., Local 1442 v. Dep't of the Army*, Nos. 2014-3175, 2014-3189, 2015 WL 6143247, at *1–2 (Fed. Cir. Oct. 20, 2015) ("*NFFE*"); *Einboden v. Dep't of the Navy*, 802 F.3d 1321, 1323 (Fed. Cir. 2015). As a result of this legislation, the Department of Defense's ("DOD") yearly budget was cut by $37 billion approximately halfway through Fiscal Year 2013. Knowing that its budget would be cut significantly, the DOD took a number of steps to respond to the sequestration. One such step involved notifying most of the DOD's civilian personnel of the possibility of furloughs. In a May 2013 memorandum, the Secretary of Defense explained that more than $30 billion of the total $37 billion cut would be to operation and maintenance accounts that pay many, but not all, of the DOD's civilian workers. The memorandum also explained that furloughs of civilian workers would be imposed in every military department, with only limited exceptions for civilians deployed in combat zones, necessary to protect life and property, or excepted for specific mission reasons. While the DOD originally expected to furlough civilian employees for up to eleven days, it was able to reduce this number of days to six after Congress approved a large reprogramming request DOD made earlier that year, which gave the DOD flexibility to move funds across accounts.

Mr. Smith is a civilian employee at the Space and Missile Systems Center, Los Angeles Air Force Base, and

his salary is paid from the Air Force's Research, Development, Test, and Evaluation program ("RDT&E" or "Program"). Of the sixteen appropriations that fund the Air Force, thirteen were directly impacted by the sequestration, including both the RDT&E program and Operations and Maintenance. Mr. Smith was provided notice of the furloughs and ultimately was furloughed for six days. Mr. Smith filed a timely notice of appeal with the Board, alleging that he was improperly furloughed for several reasons. The Board consolidated his case with several others, and, after a hearing, determined that the Air Force had shown there was cause for the furloughs and that the furloughs promoted the efficiency of the service. Specifically, the Board determined that the Air Force met its burden by showing that the furloughs were a reasonable management solution to the financial restrictions it faced and that it determined which employees to furlough in a fair and even manner. Mr. Smith timely appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our review of the Board's decisions is limited by statute. We may set aside the Board's decision only if we find it to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Einboden*, 802 F.3d at 1324. An agency, such as the DOD, may furlough an employee for lack of work or funds or for other non-disciplinary reasons. 5 U.S.C. §§ 7511(a)(5), 7512(5); *NFFE*, 2015 WL 6143247, at *4. Because furloughs of thirty days or less are adverse actions, an agency can only take such action if it "will promote the efficiency of the service." *NFFE*, 2015 WL 6143247, at *4 (quoting 5 U.S.C. § 7513(a)). The "'efficiency of the service' standard in a furlough case is satisfied by the agency demonstrating 'that the furlough was a reasonable management solution to the financial restrictions placed on it and that

the agency applied its determination as to which employees to furlough in a 'fair and even manner.'"" *Id.* (quoting *Chandler v. Dep't of the Treasury*, 120 M.S.P.R. 163, 171 (2013)).

The Board determined that the Air Force met its burden of establishing that Mr. Smith's furlough promoted the efficiency of the service. Noting that agencies have broad discretion to take action to avoid deficits, the Board found that the Air Force showed that the DOD had to make significant budgetary cuts as a result of the sequestration legislation to avoid a deficit. It also found that the DOD's response was a reasonable management solution to the financial restrictions and that the DOD decided which employees to furlough in a fair and even manner. We see no reversible error in the Board's analysis.

On appeal, Mr. Smith argues that his furlough notice only discussed a shortage of funds in Operations and Maintenance funds—not the RDT&E program funds from which he was paid. He argues that, while the Air Force could "reprogram" funds from one RDT&E program element to another program element on its own, any transfer of funds from an RDT&E account requires Congressional approval. Thus, Mr. Smith argues that because his furlough notice only identified shortages in Operations and Maintenance accounts and the Air Force did not request Congressional approval to transfer funds from the specific RDT&E program account that paid his salary, the Air Force failed to establish any need for these funds.

Mr. Smith's argument fails. The Air Force, like the Department of the Army, "operates under the authority, direction, and control of the Secretary of Defense." 10 U.S.C. § 8011; *see NFFE*, 2015 WL 6143247, at *7 (citing 10 U.S.C. § 3011). And, similar to the Secretary of the Army, the Secretary of the Air Force is responsible for "the effective and timely implementation of policy, program, and budget decisions and instructions of the Presi-

dent or the Secretary of Defense relating to the functions of the Department of the Air Force." 10 U.S.C. § 8013(c)(3); *see NFFE*, 2015 WL 6143247, at *7 (citing 10 U.S.C. § 3013(c)(3)). Thus, as explained in *NFFE*, it was reasonable for the DOD to consider its budget holistically when faced with sequestration, rather than isolating components—or, as here, accounts—of a military department. 2015 WL 6143247, at *7.

Mr. Smith's argument that the Air Force neither reprogrammed nor requested transfer of funds similarly fails. First, as the Board explained, the DOD did submit a request to Congress to reprogram funds—a request that Congress approved. The fact that the DOD ultimately did not need to reprogram funds out of the specific program that paid Mr. Smith's salary does not matter here. In *Einboden*, we held that a military department organized under the DOD is not required to show actual reprogramming of funds saved by the furlough in order to prove that the "efficiency of the service" standard is met. 802 F.3d at 1325. Rather, we explained that we "give wide berth to agency decisions as to what type of adverse action is necessary to 'promote the efficiency of the service,' provided that the agency's decision bears some nexus to the reason for the adverse action." *Id.* at 1325–26. Here, as in *Einboden*, that nexus requirement is met. The DOD was faced with an agency-wide funding shortfall. As part of the measures to adapt to this shortfall, the DOD implemented agency-wide furloughs of civilian employees with only limited exceptions, which the DOD estimated would save it about $2 billion. S.A. 2.

Mr. Smith has not shown that the Air Force's decision to furlough him was unreasonable. He argues this decision was unreasonable because it was based on a concern for fairness and equity, not because the RDT&E program lacked funds. Specifically, he alleges that Air Force commanders testified that they did not want to furlough employees paid with Operations and Maintenance funds while employees paid with RDT&E program funds were

still able to work. In order to meet the "efficiency of the service" standard, an agency must show that it applied its determination as to which employees to furlough in a fair and even manner *in addition* to showing that the furlough was a reasonable management solution to the financial restriction placed on it. *NFFE*, 2015 WL 6143247, at *4. As the Board recognized, the Air Force offered evidence that it applied the furloughs uniformly to all civilian employees, with only a limited set of exemptions. S.A. 5. The Air Force commanders' testimony supports the Board's finding.

Finally, Mr. Smith argues that the Air Force failed to include relevant documents in the administrative record and that the Board erred in denying his motion to compel responses to some of his discovery requests. "Procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Curtin v. Office of Personnel Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988). We "will not overturn the board on such matters unless an abuse of discretion is clear and is harmful." *Id.* Mr. Smith does not show how the Board's denial of his motion to compel certain documents and information resulted in a clear and harmful abuse of discretion. And we discern no clear or harmful abuse of discretion on our own review of the record. We have considered Mr. Smith's remaining arguments and they are without merit.

CONCLUSION

For the foregoing reasons, the judgment of the Board is *affirmed*.

**AFFIRMED**

COSTS

No costs.