# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CYNTHIA A. METIVIER,
               Appellant,

        v.

DEPARTMENT OF THE INTERIOR,
               Agency.

DOCKET NUMBER
CH-0351-14-0772-I-1

DATE: December 21, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[*]

Cynthia A. Metivier, Esquire, Woodbury, Minnesota, pro se.

Gavin M. Frost, Esquire, and Deborah S. Charette, Esquire, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's action separating her by reduction in force (RIF). Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2      The agency separated the appellant by RIF from her GS‑0905‑15 Attorney‑Advisor position with the agency's Office of Hearings and Appeals (OHA), White Earth Land Settlement Act (WELSA) Hearings Division, in Minneapolis (Bloomington), Minnesota. Initial Appeal File (IAF), Tab 7 at 17, 35-37, 77, 92‑94, 112-13. On appeal to the Board, the appellant asserted that the agency abolished her position based on reasons personal to her, misinformed her about her eligibility to participate in the Career Transition Assistance Plan, failed to select her for a different position, included her position in the wrong competitive area, incorrectly calculated her service computation date, and took numerous actions against her other than her separation by RIF in reprisal for whistleblowing. IAF, Tab 20 at 2, 4-6. She also claimed that her separation was based on sex discrimination, reprisal for whistleblowing, and retaliation for filing grievances and equal employment opportunity (EEO) complaints. *Id.* at 11-14.

¶3      After a hearing, the administrative judge affirmed the agency's action. IAF, Tab 43, Initial Decision (ID) at 1, 37. The administrative judge found that the agency proved by preponderant evidence that the RIF was taken for a legitimate

reason, namely, a reorganization arising from budget constraints due to sequestration; properly applied RIF regulations in abolishing the appellant's position because the agency no longer required an Attorney-Advisor to work exclusively on WELSA cases; proved that it properly separated the appellant based on her retention standing, competitive area, and service computation date; and did not mislead her about her eligibility to participate in career transition assistance programs. ID at 7-15. The administrative judge also found that the appellant did not prove her claims of discrimination based on sex and EEO activity, retaliation for filing grievances, and reprisal for whistleblowing. ID at 15-36. The administrative judge noted that the appellant did not exhaust her administrative remedy before the Office of Special Counsel (OSC) and therefore abandoned her possible claims in an individual right of action (IRA) appeal involving her reassignment, significant change in duties and working conditions, performance rating, and suspensions. ID at 28 n.13.

¶4    The appellant asserts on review that the administrative judge improperly failed to consider her motion for sanctions against the agency for misconduct, including the agency's attempts to coerce and retaliate against her witnesses. Petition for Review (PFR) File, Tab 1 at 8. The appellant contends that witness P.H. overheard the agency's representative shouting at the appellant before her testimony, which made P.H. uncomfortable, and that P.H., her supervisor, and the agency's representative discussed issues without the appellant's knowledge such as whether P.H. would travel to Minnesota when she testified or would testify via videoconference from Washington, D.C., the type of transportation P.H. used to travel to Minnesota, and whether P.H. had asked the appellant to call her before other witnesses, even though the agency representative knew the answer because the order of witnesses already had been determined. *Id.* at 9. The appellant asserts that, after she filed her motion for sanctions, P.H.'s supervisor suspended P.H.'s ability to telework, instructed her to turn over her Government cell phone, informed her that she was deactivating the service, reassigned P.H.'s job

functions and assignments to others, and told her that she could no longer take her computer or use Wi-Fi while traveling to provide testimony. *Id.* at 10. The appellant contends that the administrative judge later disregarded P.H.'s testimony and unfairly referred to it as "bitter." *Id.* at 11. The appellant asserts that another witness changed the prior sworn testimony he gave to an EEO investigator after speaking with the agency's representative. *Id.*

¶5 The appellant filed a motion for sanctions below asserting that the agency's representative engaged in the behavior described above. IAF, Tab 36 at 4-7. As a sanction, the appellant requested that the administrative judge prohibit the agency's representative from further representing the agency. *Id.* at 7. The written record does not show that the administrative judge ruled on the motion. IAF, Tabs 37-43. To the extent that the administrative judge failed to rule on the appellant's motion, such a failure was nonprejudicial error. *See Jarrard v. Department of Justice*, 113 M.S.P.R. 502, ¶ 11 n.1 (2010) (finding that it was error for an administrative judge not to rule on a motion to strike). An adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984). As set forth below, we find that any error by the administrative judge in failing to address the appellant's motion for sanctions did not prejudice her substantive rights.

¶6 An administrative judge may impose sanctions upon a party, including drawing an inference in favor of the requesting party, as necessary to serve the ends of justice. *Bernstein v. Department of the Army*, 82 M.S.P.R. 375, ¶ 7 (1999). Such a sanction also may involve excluding or limiting a representative's participation for contumacious conduct or conduct prejudicial to the administration of justice. 5 C.F.R. § 1201.43(d). The Board has required evidence showing that an agency official threatened a witness with adverse consequences, such as disciplinary action, or suggested that a witness either not testify or not testify truthfully before the Board will find that the agency official

intimidated that witness. *Bernstein*, 82 M.S.P.R. 375, ¶ 12. We find that the allegations set forth above, even if true, do not rise to the level of witness intimidation, contumacious conduct, or conduct prejudicial to the administration of justice. *See West v. U.S. Postal Service*, 44 M.S.P.R. 551, 560-61 (1990). In any event, the appellant has not shown that the denial of her motion affected her substantive rights because she does not suggest how the witnesses in question would have testified absent such alleged intimidation. *See De Bow v. Department of the Air Force*, 97 M.S.P.R. 5, ¶ 11 (2004). Thus, the appellant has not shown a basis for imposing a sanction in this case.

¶7 The appellant also contends that the administrative judge erred when she denied as irrelevant the appellant's request for J.R., O.F., and J.W. as witnesses, all of whom were deciding officials in either the disciplinary actions taken against her or her performance appraisals, and her request for E.W., who was the primary contact for the RIF. PFR File, Tab 1 at 11. The appellant asserts that the administrative judge then improperly referred to statements from J.R., O.F., and J.W. in the initial decision, even though the appellant did not have an opportunity to cross-examine them. *Id.* at 11-12. She also contends that the administrative judge did not respond to her motion to clarify the summary of a prehearing conference. *Id.* at 8, 12.

¶8 The appellant asserted that J.R., O.F., J.W., and E.W. would testify to the "contents of [their] sworn affidavit[s] and the events surrounding the disciplinary actions taken against the Appellant." IAF, Tab 19, Part A at 29. The administrative judge granted four witnesses who had been requested by both parties, five additional witnesses requested by the agency, and three additional witnesses requested by the appellant. IAF, Tab 20 at 16-17. The administrative judge denied the request for J.R., O.F., J.W., and E.W. as irrelevant. *Id.* at 17.

¶9 An administrative judge has wide discretion under 5 C.F.R. § 1201.41(b)(8), (10) to exclude witnesses when it has not been shown that their testimony would be relevant, material, and nonrepetitious. *Franco v. U.S. Postal*

*Service*, 27 M.S.P.R. 322, 325 (1985). Here, the appellant did not indicate in her prehearing submission that these witnesses' hearing testimony would differ from their affidavit testimony. Moreover, the summary of the prehearing conference did not identify any disciplinary actions taken against the appellant as issues in the case, except to the extent that they could form the basis for an IRA appeal, IAF, Tab 20 at 1-14, and the appellant did not object to the administrative judge's rulings on witnesses, *see Tarpley v. U.S. Postal Service*, 37 M.S.P.R. 579, 581 (1988) (finding that the appellant's failure to timely object to the administrative judge's rulings on witnesses precluded his doing so on petition for review). The administrative judge noted that the appellant indicated that she had not requested corrective action from OSC, *id.* at 10, and ultimately found that the appellant abandoned her whistleblowing claim, ID at 28 n.13. Thus, we find no abuse of discretion by the administrative judge in denying these witnesses. Although the appellant asserts that the administrative judge did not respond to her motion to clarify the summary of the prehearing conference, it is not clear from the appellant's motion what she sought to have clarified aside from possible questions regarding deadline dates. IAF, Tab 21 at 4-5. Any such ambiguity is not relevant to the issues on review.

¶10        The appellant also asserts that the administrative judge did not cite to *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987), or refer to the factors for determining credibility set forth in *Hillen*. PFR File, Tab 1 at 13. She contends that, contrary to her supervisor's unsupported testimony that production in the WELSA office declined sharply in April 2013 without paralegal support, thereby justifying the reassignment of new cases away from the appellant to an administrative law judge in Salt Lake City, Utah, the appellant continued to maintain similar production numbers, with only 18 fewer cases produced between fiscal years 2012 and 2013. *Id.* The appellant asserts that her supervisor testified falsely that she lowered the appellant's performance appraisal due to, among other things, the appellant saying to her that a paralegal was "unable to learn,"

"not normal," and "seemed like a child with a disability"; the appellant asserts that she did not attribute negative statements to the paralegal, did not make false claims, and was not uncooperative. *Id.* at 13-14. In particular, the appellant asserts that statements her supervisor made in her pre-fiscal year (FY) 2012 appraisals of the appellant and to an EEO investigator regarding the contents of the FY 2012 appraisal conflict with the findings made by the administrative judge in the initial decision. *Id.* at 14. The appellant further contends that, contrary to her supervisor's testimony that the appellant objected to using the support staff in Salt Lake City, the exhibit cited by the administrative judge did not support that testimony. *Id.* at 15. She also asserts that her supervisor's testimony that the appellant was disrespectful and argumentative during a teleconference was contradicted by testimony and evidence from a legal assistant, P.H., and the appellant. *Id.*

¶11    The administrative judge found that in May 2014, the agency directed the appellant's supervisor to reduce the OHA's budget by $474,000 and approximately four full-time equivalent positions (FTEs). ID at 8; IAF, Tab 7 at 83; Hearing Transcript Day 1 (HTD1) at 35-38. The appellant does not dispute this finding on review. The record also reflects that the appellant's supervisor determined that other offices within her control could not absorb the loss of FTEs, but the WELSA division, which consisted of the appellant and another individual at the time, was a stand-alone office that was expensive, handled a relatively small case load, and could be eliminated because the Salt Lake City office could absorb WELSA work without additional FTEs. HTD1 at 42-43. We find that the administrative judge correctly determined that the agency's decision to reorganize by closing the WELSA office was not arbitrary or irrational under the circumstances, and that Federal agencies have broad management discretion to act to avoid a budgetary deficit. ID at 8‑10; *see Waksman v. Department of Commerce*, 37 M.S.P.R. 640, 645 (1988), *aff'd sub nom. Harris v. Department of Commerce*, 878 F.2d 1447 (Fed. Cir. 1989) (Table); *cf. Einboden v. Department*

*of the Navy*, [802 F.3d 1321](), 1325-26 (Fed. Cir. 2015) (holding that a furlough promotes the efficiency of the service when it is a reasonable management solution to the financial restrictions placed on the agency). The agency, not the Board, is responsible for deciding whether to retain or abolish particular positions during a RIF and how to accommodate a shortage of funds. *Waksman*, 37 M.S.P.R. at 645-46. Regarding the appellant's performance appraisal, the administrative judge correctly found that, even if the appellant's appraisal had been rated superior, rather than minimally successful for FY 2012, it did not make a difference in the appellant's retention standing for purposes of the RIF. ID at 12-13; *see* Hearing Transcript Day 2 at 210-14. The appellant's other arguments do not demonstrate error in the administrative judge's determination that the agency showed by preponderant evidence that the RIF was bona fide and not personal to the appellant. ID at 8-10.

¶12    The appellant also asserts that her supervisor had discriminatory animus because she verbally opposed a settlement agreement into which the appellant had entered, gave her a minimally successful performance appraisal for FY 2012 based on information she later admitted was unsubstantiated, initiated two unfounded disciplinary actions against the appellant suspending her for 3 and 5 days, respectively, and directed her to attend weekly teleconferences at which she was harassed and verbally abused. PFR File, Tab 1 at 17-18. Further, the appellant contends that her supervisor was only an "Acting Director" who should not have initiated restructuring actions but who instead should have been a "caretaker," a tribal council chairwoman objected to moving the WELSA office to Salt Lake City, and similarly situated male employees were retained. *Id.* at 19-20, 23.

¶13    The administrative judge found that the appellant did not show that her supervisor placed false information in her FY 2012 performance evaluation, the appellant's evidence regarding her prior disciplinary actions did not establish a motive for sex discrimination, the legal assistant who attended the weekly

teleconferences did not substantiate the appellant's claim that the appellant's supervisor defamed, threatened, and abused her, P.H.'s testimony did not support a finding of sex discrimination because she did not testify that the appellant's supervisor treated women any differently from men, and the appellant was not similarly situated to male employees who were not separated because they either held a different position, occupied a different grade level, or held a position that the agency determined it needed to retain. ID at 18‑21. Although the appellant contends that her supervisor opposed the term of the settlement agreement requiring the agency to appoint the appellant to a position in the Twin Cities area, the record reflects that the appellant's supervisor acknowledged that the matter had been decided, but merely expressed her view that it was not financially advantageous to open a new office in that location. HTD1 at 81-83. The appellant has not identified on review any evidence showing that her supervisor lacked the authority to recommend or implement the restructuring changes at issue in this case, even as an acting director. In fact, although an acting director typically may not have taken bold, major restructuring actions, the then-Deputy Assistant Secretary testified that she came to him with restructuring ideas "because of the crisis that we were in and my . . . pressure to all of the offices to really . . . scrub every opportunity," and that such recommendations from the appellant's supervisor were "exactly what I was hoping to see from all of my offices." HTD1 at 147-48, 161-62. The appellant has identified no evidence on review showing that the agency's decision to abolish her position, despite any initial objection from a tribal chief as to the WELSA office's location, was based on discrimination.

¶14      In adjudicating the appellant's discrimination claim, the administrative judge applied the evidentiary standards set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 42-43, 51 (2015), and observed that the appellant sought to prove her claim with circumstantial evidence using a "mosaic" theory of discrimination. ID at 17. Regardless of the characterization of evidence relating

to the discrimination claim, we find that the administrative judge properly considered the evidence as a whole in finding that the appellant did not prove that discrimination based on sex or retaliation based on prior EEO activity was a motivating factor in her separation by RIF. *See Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 30-31 (2016).

¶15 Finally, the appellant contends that the agency should have selected her for an administrative judge position with the Indian Board of Appeals, and that her supervisor harmed her selection prospects by informing the selecting official that the appellant had filed a grievance and an EEO complaint. PFR File, Tab 1 at 24. The appellant also asserts that, because the agency transferred her function to Salt Lake City, it should have transferred her to the Salt Lake City competitive area without a change in the tenure of her employment. *Id.* at 26-27.

¶16 The appellant has not shown that her nonselection for another position is relevant to the merits of her separation by RIF or her affirmative defenses. Moreover, whether the agency should have applied the transfer of function regulations set forth at 5 C.F.R. part 351, subpart C was not identified as an issue in this case. IAF, Tab 20 at 1-6. Because the appellant did not raise this argument regarding transfer of function below, and she has not shown that it is based on new and material evidence not previously available despite her due diligence, we need not address it for the first time on review. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). In any event, we find that no transfer of function occurred in this case. A "function" is "all or a clearly identifiable segment of an agency's mission (including all integral parts of that mission), regardless of how it is performed." 5 C.F.R. § 351.203. A "transfer of function," in relevant part, is "the transfer of the performance of a continuing function from one competitive area and its addition to one or more other competitive areas, except when the function involved is virtually identical to functions already being performed in the other competitive area(s) affected." *Id.* No transfer of function occurred in this case because the agency's Salt Lake City

office was already performing an adjudication function, including processing WELSA cases. IAF, Tab 7, Part 4 at 14, 18; HTD1 at 32-34, 168-69; *see Mullen v. Department of the Navy*, 76 M.S.P.R. 590, 597 (1997).

¶17 Accordingly, we deny the petition for review and affirm the initial decision.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no

later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B)  (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in

title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.