NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RICHARD C. DALE,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2016-2488

---

Petition for review of the Merit Systems Protection Board in No. PH-0752-13-1318-I-1.

---

Decided: August 14, 2017

---

RICHARD C. DALE, Richmond, RI, pro se.

RETA EMMA BEZAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD.

---

Before O'MALLEY, REYNA, and TARANTO, *Circuit Judges.*

PER CURIAM.

The Merit Systems Protection Board affirmed the United States Department of the Navy's decision to furlough various civilian employees in 2013, including Richard Dale. Mr. Dale appeals from the Board's decision, arguing that the Navy improperly furloughed him. Because we find no legal error in the Board's analysis and substantial evidence supports the Board's findings, we affirm.

## BACKGROUND

### 1. The Sequester and Furlough

This appeal stems from events set in motion by the Budget Control Act of 2011 ("BCA"). The BCA sought to limit federal agency spending by creating automatic budget reductions known as "sequestration" if Congress failed to enact deficit reduction legislation by January 15, 2013. Pub. L. No. 112-25, §§ 101–103, 125 Stat. 240, 241–46 (2011). Congress later passed the American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, § 901, 126 Stat. 2313, 2370 (2012), which delayed sequestration until March 1, 2013. Congress did not enact deficit reduction legislation by March 1, 2013; therefore, President Obama issued the required sequestration order on that date. 78 Fed. Reg. 14,633. The sequestration order canceled $85 billion in resources across the federal government for the remainder of fiscal year 2013. Of that total, the Department of Defense ("DoD") suffered a $37 billion cancellation. J.A. 226; *Calhoun v. Dep't of the Army*, 845 F.3d 1176, 1177 (Fed. Cir. 2017).

In May 2013, Secretary of Defense Chuck Hagel issued a Memorandum stating that DoD managers should prepare to furlough most civilian personnel for up to 11 days due to "[m]ajor budgetary shortfalls." J.A. 245. Secretary Hagel's May 2013 Memorandum exempted

several categories of DoD employees from furlough.  J.A. 246–47; *see also* J.A. 227 (summarizing categories).

Mr. Dale is employed as an attorney in the Navy's Office of General Counsel.  On May 28, 2013, Mr. Dale was issued a Notice of Proposed Furlough.  The May 2013 Notice stated that the Navy proposed to furlough Mr. Dale no earlier than 30 days after his receipt of the notice.  It further stated that the furlough "is necessitated by the extraordinary and serious budgetary challenges facing [DoD] for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on March 1, 2013."  J.A. 223.

On June 24, 2013, Mary Wohlgemuth, Technical Director, Naval Undersea Warfare Center ("NUWC") Division, Newport, Rhode Island, issued to Mr. Dale a Notice of Decision to Furlough.  The June 2013 Notice upheld the reasoning provided in the Notice of Proposed Furlough and required Mr. Dale to be on discontinuous furlough for up to 11 workdays between July 8, 2013 and September 30, 2013.  The June 2013 Notice advised Mr. Dale of his right to appeal the Navy's furlough decision to the Board.  In July 2013, Mr. Dale filed an appeal with the Board.  In August 2013, following congressional and agency budgetary action, Secretary Hagel reduced the furlough from 11 days to 6 days.

### 2.  Appeal to the Board

#### a.  Discovery Dispute

On appeal before the Board, Mr. Dale sought discovery from the Navy, including broad interrogatories regarding communications between the Navy and the Board.  After the Navy objected, Mr. Dale moved to compel responses from the Navy and moved for sanctions.  In December 2015, the administrative judge ("AJ") granted Mr. Dale's motion in part, ordering the Navy to respond to

certain interrogatories and deposition requests.  J.A. 95–
96.  The Navy provided updated responses.

Still unsatisfied, Mr. Dale filed a second motion to
compel and for sanctions in January 2016.  The AJ denied
Mr. Dale's January 2016 motion.  The AJ wrote that
Mr. Dale did not establish that the information he sought
would be reasonably calculated to lead to admissible
evidence.  The AJ also noted that the Navy provided a
sworn declaration stating that, although the Navy and
the Board communicated regarding the furlough appeals,
those communications were limited to administrative
information.  J.A. 135.  The AJ concluded that the com-
munications between the Navy and the Board were not
prohibited *ex parte* communications and that they did not
substantively affect Mr. Dale's appeal.  *Id.*  Mr. Dale
moved to certify an interlocutory appeal regarding the
discovery dispute, which the AJ denied.

### b.  Initial Decision

In a May 16, 2016 initial decision, the AJ affirmed the
Navy's actions after concluding that the Navy "has proven
by preponderant evidence that there was a factual basis
for the furlough actions and that the furlough actions
were taken only for such cause as promoted the efficiency
of service."  J.A. 225.  In support of its conclusion, the AJ
cited a declaration by Robert Hale, the Under Secretary of
Defense (Comptroller)/Chief Financial Officer of DoD.
Comptroller Hale explained that DoD had begun as early
as February 2013 to slow spending in anticipation of a
possible sequester.  He explained additional cuts that
occurred in April 2013.  These cuts, however, were not
sufficient to limit spending to congressionally mandated
levels without civilian furloughs.

The AJ also cited a declaration by Ms. Wohlgemuth,
who was the deciding official for civilian employees of the
NUWC Division Newport, including Mr. Dale.
Ms. Wohlgemuth stated that she followed the Navy's

furlough guidance, reviewed the civilian employees' replies, and exempted 104 employees who fit within the various exempt categories. J.A. 227. Ms. Wohlgemuth determined that Mr. Dale did not fit any category for exemption. J.A. 227–28.

The AJ summarized and rejected each of Mr. Dale's arguments on appeal. First, Mr. Dale argued that the Navy failed to fairly and evenly furlough employees because certain civilians, such as shipyard employees, were granted exemptions. The AJ noted that Mr. Dale never alleged that he was a shipyard employee or offered evidence that his position was similarly situated to shipyard employees. J.A. 228. The AJ thus found that the Navy fairly and evenly applied its furlough criteria. *Id.*

Second, Mr. Dale argued that his status as a Working Capital Fund or NUWC employee should have exempted him from furlough. In Mr. Dale's view, the Navy processed his furlough in violation of the Balanced Budget and Emergency Deficit Control Act of 1985 ("BBEDCA"), the BCA, and 10 U.S.C. § 129. Section 129 requires DoD to manage each fiscal year consistent with "the workload required to carry out [its] functions and activities" and "the funds made available" to DoD each fiscal year. The AJ cited Comptroller Hale's declaration that the furloughs saved personnel costs and did not contravene § 129, which requires DoD to manage its workforce based on the funds allocated to it each fiscal year. J.A. 229. Finding that Mr. Dale failed to refute Comptroller Hale's declaration, the AJ determined that the Navy did not violate § 129. The AJ further found that Mr. Dale failed to substantiate his claim that he was exempt pursuant to the BBEDCA or BCA. *Id.*

Third, Mr. Dale argued that Secretary Hagel failed to give adequate notice of the furlough, in violation of 10 U.S.C. § 1597(e). Section 1597(e) requires the Secretary of Defense to provide a report to Congress about why

furloughs are required and then wait at least 45 days before instituting the furlough. The AJ found that Secretary Hagel complied with § 1597(e) because he submitted a notice to Congress on February 20, 2013 and issued the notices of furlough in June 2013. J.A. 229–30. Therefore, the AJ concluded, Mr. Dale's argument was "without merit." J.A. 230.

Fourth, Mr. Dale argued that the Navy had enough funds to avoid the furlough and that its spending and furlough decisions were politically motivated. The AJ determined that "it was reasonable for D[o]D to consider its situation holistically, rather than isolating each individual military department's situation." J.A. 230. The AJ also found that, because the Navy's basis for invoking the furlough was legitimate, the AJ had "no authority to review the management considerations that underlie the agency's exercise of its discretion in structuring the furlough actions." *Id.*

Fifth, Mr. Dale argued that the Navy violated his due process rights because "the proposing and deciding official had no independent authority based on Secretary Hagel's decision to furlough all civilian employees." *Id.* The AJ explained that due process requires a meaningful opportunity to respond to a notice of proposed furlough. Due process further requires a deciding official who has the authority to take or recommend agency action based on that response. Citing Ms. Wohlgemuth's declaration, the AJ found that Mr. Dale received "notice of the proposed furlough actions, an opportunity to review the supporting materials, and an opportunity to respond to the proposal." J.A. 231. Ms. Wohlgemuth testified that she had authority to modify the furlough length based on employees' responses to the notice of proposed furlough. The AJ found Ms. Wohlgemuth's testimony was consistent with Secretary Hagel's statement and unrefuted by Mr. Dale. *Id.* Based on this evidence, the AJ concluded that the Navy did not violate Mr. Dale's due process rights.

Finally, Mr. Dale argued that the Navy violated Secretary of the Navy Instruction ("SECNAVINST") 5430.25E MD-13, which states that all personnel actions involving attorneys must be subject to the approval of the General Counsel. The Navy submitted a June 11, 2013 memorandum entitled "Delegation of Authority to Furlough Office of General Counsel (OGC) Attorneys," which addressed Section 5430.25E and delegated authority of the General Counsel to decide whether to furlough OGC attorneys to the deciding officials. J.A. 232. Mr. Dale did not dispute the existence of the memo, and the AJ determined that he failed to establish a violation of Section 5430.25E. Even if there were a violation, the AJ noted, Mr. Dale failed to prove that the furlough decisions would have been different absent the error. J.A. 233. Based on this evidence, the AJ found that Mr. Dale failed to prove harmful error in the Navy's furlough actions and affirmed the Navy's action. *Id.*

The AJ's decision became final on June 20, 2016. Mr. Dale appeals from the final decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Congress requires us to affirm Board decisions unless they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). As the petitioner, Mr. Dale bears the burden of proving that the Board erred. *Jones v. Dep't of Health & Human Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016). Mr. Dale must also prove that any agency error substantially harmed or prejudiced him, such that the outcome of the case could have been different. 5 C.F.R. § 1201.56(b)(1), (c)(3) (2005); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

On appeal before this court, Mr. Dale raises many of the same issues he raised before the Board. First, he argues that he was improperly denied discovery. Relying on *Templeton v. Office of Personnel Management*, 951 F.2d 338, 342 (Fed. Cir. 1991), Mr. Dale contends that employees are permitted broad discovery against their employers. He concedes, however, that "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." *Smith v. Dep't of the Air Force*, 638 F. App'x 992, 995 (Fed. Cir. 2016) (quoting *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1371, 1378 (Fed. Cir. 1988)). Thus, we review this matter for abuse of discretion. The AJ determined that the Navy provided adequate responses to Mr. Dale's discovery requests and that further responses would not have resulted in relevant information reasonably calculated to lead to admissible evidence. J.A. 134–36. Mr. Dale has not raised any argument on appeal demonstrating that the AJ's determination was an abuse of discretion. He also has not demonstrated, as he must, that the outcome of the case could have been different if the AJ allowed the discovery. *See Whitmore*, 680 F.3d at 1368.

Second, Mr. Dale appears to argue that the Navy engaged in improper *ex parte* communications with the Board. Board regulations prohibit "ex parte communications that concern the merits of any matter before the Board for adjudication, or that otherwise violate rules requiring written submissions." 5 C.F.R. § 1201.102. As Mr. Dale correctly concedes, however, "under Board practice, *ex parte* communications are not prohibited *per se*." Opening Br. 21. Mr. Dale does not does not persuade us that the Navy's communication with the Board was improper in this case. He cites four proposals that the Navy sent the Board on July 10, 2013, in anticipation of "the unprecedented volume of appeals from one DoD component alone." J.A. 243. All four proposals, however, were procedural and not substantive. The July 10, 2013

communication did not concern the merits of Mr. Dale's appeal and thus was permissible. The Board's July 23, 2013 response to the Navy similarly discussed only procedural methods for managing the influx of appeals. *See* J.A. 241–42. We agree with the Board that the *ex parte* communications between the Navy and the Board were not improper.

Mr. Dale next argues that the Navy failed to provide him adequate notice and an opportunity to respond to the notice of furlough. According to Mr. Dale, Ms. Wohlgemuth "lacked the authority to do anything other than confirm the DoD's directed furlough." Opening Br. 34. Mr. Dale asserts that DoD directed the Navy to furlough employees and restricted the Navy's discretion in deciding furlough cases. The record indicates, however, that Ms. Wohlgemuth possessed sufficient discretion to comport with due process. She testified that, after reviewing employees' responses, she exempted over 100 employees. J.A. 227.

We recently held that due process does not require the deciding official to have "unfettered discretion"; rather, she need only have "authority to take or recommend action." *Calhoun*, 845 F.3d at 1179. In *Calhoun*, we concluded that the appellant's due process rights were not violated when the deciding official's discretion was limited to determining whether the petition fell within one of the exemption categories or whether furlough hours should be reduced. *Id.* So too here, Ms. Wohlgemuth had discretion to take or recommend action—and did so for over 100 employees. J.A. 227, 231, 319. We find such discretion to be "commensurate with the nature of the furlough decisions." *Calhoun*, 845 F.3d at 1179.

Next, Mr. Dale argues that the furlough violated 5 C.F.R. § 752.404, which sets forth procedures governing proposed action. Section 752.404(b)(1) requires the agency to "state the specific reason(s) for the proposed action."

Mr. Dale contends that his notice of proposed action "never stated the basis for selecting Mr. Dale himself" and "never discussed the establishment of competitive levels" necessary to distinguish which employees should be furloughed from those who should not. Opening Br. 45. As the Government points out, however, an agency "must state the basis for selecting a particular employee for furlough" only if "some but not all employees in a given competitive level are being furloughed." § 752.404(b)(2). Mr. Dale fails to allege, and we do not discern anything in the record to suggest, that some employees within Mr. Dale's competitive level were not furloughed. *See* J.A. 8–9 (providing reasons "if" other employees are not furloughed or furloughed for a different amount of time, but not stating any differences actually occurred). Thus, § 752.404(b)(2) does not apply, and the Navy was not required to state the basis for furloughing Mr. Dale in particular.

Mr. Dale next alleges that the Navy violated the version of 10 U.S.C. § 129(b) in effect at the time of the furlough. Specifically, Mr. Dale argues that the furlough "constituted a prohibited constraint or limitation in terms of man years." Opening Br. 50. We agree with the Government that the Navy was required to manage its fiscal year "solely on the basis of and consistent with" the required workload and the available funds. 10 U.S.C. § 129(a) (2011). Comptroller Hale stated that a short-term furlough comported with § 129, J.A. 303, and while we do not defer to legal conclusions, we agree with Comptroller Hale's assessment here. Substantial evidence supports finding that the furloughs were necessary to comply with § 129(a), and Mr. Dale has failed to explain how the six-day furlough violates § 129(b) by constraining or limiting man years.

Finally, Mr. Dale asserts that the Navy violated SECNAVINST 5430.25E. That instruction requires "all personnel actions involving OGC attorneys" to be "subject

to the approval of the General Counsel." J.A. 277. The General Counsel of the Navy did not make the furlough decision, argues Mr. Dale, nor was the decision subject to the General Counsel's approval. Mr. Dale acknowledges that the General Counsel delegated furlough authority to the deciding official. *See* J.A. 232–33, 294–95. But he argues that the instruction does not provide for delegation. We agree with the Government that the relevant inquiry is not whether the instruction affirmatively allowed delegation but whether it prohibited delegation. Here, we find no indication that the General Counsel was prohibited from delegating the furlough authority under these circumstances. We thus find no violation of SECNAVINST 5430.25E.

## CONCLUSION

We have considered the remainder of Mr. Dale's arguments and find them to be unpersuasive. The Board properly applied the law to Mr. Dale's appeal, and substantial evidence supports its findings. We therefore affirm the Board's final decision.

## AFFIRMED

### COSTS

No costs.